IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| DANIEL MICHALSKI<br>on behalf of himself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>MIB GROUP, INC., MIB, LLC and FIDELITY SECURITY LIFE INSURANCE COMPANY,<br><br>    *Defendants*. | Civil Matter No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED** |

## I.    PRELIMINARY STATEMENT

1. Plaintiff Daniel Michalski brings this action on his own behalf and on behalf of all other persons similarly situated against Defendants MIB Group, Inc. and MIB, LLC (collectively "MIB") and Fidelity Security Life Insurance Company ("Fidelity") to address widespread violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA").

2. MIB is a nationwide specialty consumer reporting agency ("CRA") that gathers and sells medical history information bearing on consumers' eligibility for insurance, and compiles it on reports sold to prospective insurers. Although MIB admits to being regulated by the FCRA, it nonetheless violates the important protections in the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the consumer reports it prepares and disseminates in connection with consumers' application for insurance. Specifically, MIB regularly includes on such reports information that does not accurately reflect the consumer's medical history, or which does not pertain to the individual who is the subject of the report at all.

3. MIB exacerbates this inaccurate reporting by systematically failing to provide clear and accurate disclosures of the information in its files, including both the original and intermediate

vendor source(s) of such the information. MIB thus deprives consumers of valuable congressionally-mandated information and makes it more difficult for consumers such as Plaintiff to correct errors.

4. MIB furthermore violates the FCRA by failing to conduct reasonable reinvestigations of information disputed consumers, including but not limited to simply "parroting" the responses provided by its intermediate vendor sources without conducting any investigation of its own.

5. Defendant Fidelity, one of MIB's sources of information, also fails to satisfy its independent obligations under the FCRA by failing to conduct a reasonable reinvestigation into consumers' disputes after receiving notice of such disputes from MIB, resulting in continued inaccurate reporting.

6. Defendants' conduct deprives consumers of their rights under federal law and results in widespread harm.

## II.  JURISDICTION *and* VENUE

7. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

8. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.  PARTIES

9. Plaintiff Daniel Michalski is an adult individual who resides in Clarksville, Tennessee. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant MIB Group, Inc is a corporation that maintains its principal place of business in Braintree, Massachusetts. At all times pertinent hereto, Defendant was a "person" and

a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

11. Defendant MIB, LLC is a corporation that maintains its principal place of business in Braintree, Massachusetts. At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

12. Defendant Fidelity Security Life Insurance Company is a business entity with a principal place of business in Kansas City, Missouri.

## IV. FACTUAL ALLEGATIONS

### A. MIB Sells Inaccurate Reports Regarding Consumers' Medical History

13. MIB is a specialty consumer reporting agency ("CRA") in the business of gathering and selling reports about consumers which contain information about their medical histories, including details concerning "different medical conditions and other conditions (typically hazardous hobbies and adverse driving records) affecting the insurability of the applicant to whom they relate." *See* https://www.mib.com/facts_about_mib.html

14. MIB gathers information from its network of "members" which contribute information about insurance applicants. *Id.*

15. MIB compiles this information onto "coded reports" which it sells to its members to assist them in making insurance eligibility determinations. *Id.*

16. MIB is regulated by the FCRA, and the reports it sells are consumer reports governed by the FCRA.

17. MIB admits that it is regulated by the FCRA, and purports to provide consumers with file disclosures upon request and to conduct reinvestigations upon consumer disputes regarding the completeness and/or accuracy of information in its files.

18. MIB compiles reports and responds to consumer inquiries using standard policies and procedures, and does not "reinvent the wheel" with respect to each individual report or communication.

19. MIB represents that its reports contain "only accurate, timely verified, and complete information." https://www.mib.com/facts_about_mib.html

20. But MIB regularly fails, as a result of its standardized policies and procedures, to ensure that the information included on its reports in fact accurately reflects consumers' medical history.

### B. MIB Fails to Provide Clear And Accurate Disclosures Including The Source(s) of The Medical Information In its Files

21. MIB compounds the harm caused by its inaccurate reporting by concealing the identities of the source(s) of the medical records it compiles and sells about consumers, impairing consumers' ability to correct inaccuracies and prevent further inaccurate reporting of such records.

22. MIB purports to comply with the disclosure requirement of FCRA section 1681g(a) by providing consumers with information in their file in response to requests by consumers.

23. However, in its disclosures of information to consumers, MIB fails to identify the source(s) of such medical information, such as the treating or diagnosing medical professional.

24. For example, MIB simply identifies that certain items of information were provided by a "service provider" without identifying that service provider in any way.

25. Thus, consumers have no way of knowing which medical professional provided the purported treatment or diagnosis, how to identify relevant records to refute any inaccuracies, or how to correct such inaccuracies at the original source to prevent further misreporting.

26. MIB also routinely fails to identify other intermediate vendor sources of medical information on its reports, including consumer reporting agencies that compile medical information concerning consumers that provided records to MIB's insurer members.

27. The FCRA unambiguously requires CRAs such as Defendant to "clearly and accurately disclose to the consumer" who requests his or her file "the sources" that supplied any "information" to the CRA about that consumer. 15 U.S.C. § 1681g(a)(2).

28. Disclosure of the true source from which a CRA obtained information and the intermediate vendor sources is vital so that consumers always know who is furnishing important information about them, and which can allow them to prevent errors that originated with the source from spreading to other CRAs and being misreported in the future.

29. Indeed, the Consumer Financial Protection Bureau, the government agency with primary regulatory responsibility for the FCRA, has recently issued guidance making clear that CRAs "must disclose to a consumer *both the original source* and any intermediatory or vendor source (or sources) that provide" information included on disclosures. *See* Consumer Financial Protection Bureau, Jan.11, 2024 Final Rule on Fair Credit Reporting; File Disclosure, *available at* https://www.consumerfinance.gov/rules-policy/final-rules/fair-credit-reporting-file-disclosure/ (emphasis added).

30. Furthermore, MIB consistently fails to provide all of the information in its database(s) concerning consumers. As it states in disclosures to consumers, MIB communicates

5

its reports to end users through "codes" identifying the specific medical and personal information at issue.

31. But pursuant to its standardized practices and procedures, MIB does not include these "codes" on disclosures to consumers, preventing them from seeing the information actually provided to prospective insurers.

32. Despite the clear mandate of FCRA § 1681g(a), MIB fails to provide clear and accurate disclosures to consumers, including the codes actually communicated to the users of reports, and fails to provide sufficient identification of the source(s) of medical information on consumer files upon consumer request.

### C. MIB Fails to Conduct Reasonable Investigations of Disputed Information

33. In part to combat the problems associated with inaccurate reporting, Congress included a mechanism in the FCRA by which consumers may dispute inaccurate or incomplete information in their credit files.

34. When a consumer notifies a CRA that he or she disputes "the completeness or accuracy of any item of information contained in [his or her] file," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A).

35. The FCRA's reinvestigation provision requires more of the consumer reporting agency than simply contacting the source from which it obtained the information and "parroting" the response received. *Richardson v. Fleet Bank of Massachusetts*, 190 F. Supp. 2d 81, 88 (D. Mass. 2001) (citing, *inter alia*, *Cushman v. Trans Union Corp.* 115, F.3d 220, 225 (3d Cir. 1997)).

36. Despite this clear statutory obligation, MIB routinely fails to conduct any reinvestigation whatsoever upon receipt of disputes from consumers. Instead, MIB simply forwards consumer disputes on to furnishers of information, and parrots the response(s) received to the consumer.

37. At all times pertinent hereto, MIB's conduct was a result of deliberate policies and practices, was willful, and carried out in reckless disregard for a consumers' rights as set forth under the FCRA, and further assumed an unjustifiably high risk of harm.

### D. Fidelity Fails To Comply With Its FCRA Responsibilities As A Furnisher

38. Fidelity is an insurance company offering life, disability, supplemental health annuity, and stop loss insurance. *See* https://www.fslins.com/About-FSL

39. Upon information and belief, Fidelity is among the "members" of MIB.

40. Fidelity both provides information concerning individual consumers to MIB for inclusion in MIB's database, and regularly obtains reports from MIB concerning consumers for the purpose of making insurance eligibility determinations.

41. Fidelity is a furnisher of information within the meaning of the FCRA, subject to 15 U.S.C. § 1681s-2. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *see also* H.R. Rep. 108–263, at 24 (2003) ("The most common ... furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, **insurers**, collection agencies, and government agencies.") (emphasis added).

42. However, Fidelity fails to comply with its responsibilities under the FCRA by routinely failing to conduct reasonable reinvestigations upon receiving notice from consumer reporting agencies such as MIB that information it has provided is inaccurate.

43. Fidelity does not take steps to independently investigate the accuracy of the medical information it reports to MIB, for example by obtaining medical records or contacting medical professionals.

44. As a result, Fidelity routinely and as a result of its standardized practices and procedures continues to report inaccurate medical information to MIB even when it cannot confirm the accuracy of such reporting.

45. At all times pertinent hereto, Fidelity's conduct was a result of deliberate policies and practices, was willful, and carried out in reckless disregard for a consumers' rights as set forth under the FCRA, and further assumed an unjustifiably high risk of harm.

**E. The Experience of Plaintiff Daniel Michalski**

46. On or about January 17, 2022, Plaintiff Daniel Michalski applied for life insurance with Fidelity.

47. In connection with Plaintiff's application for insurance, Fidelity obtained a consumer report about Plaintiff from MIB.

48. Also in connection with Plaintiff's application, Fidelity obtained additional information purportedly concerning Plaintiff's medical history, including an assertion that he had a "malignant tumor of genital tract."

49. This assertion is inaccurate – Plaintiff has never been diagnosed with or treated for any form of cancer.

50. Fidelity denied Plaintiff's insurance application based in part upon MIB's January 17, 2022 report.

51. On January 21, 2022, Fidelity reported information to MIB for inclusion on future MIB reports, including the reference to a "malignant tumor of genital tract."

52. On or about April 14, 2023, Plaintiff applied for life insurance with the Independent Order of Foresters ("Foresters").

53. In connection with his application, Foresters obtained a consumer report concerning Plaintiff from MIB.

54. The April 14, 2023 MIB report was inaccurate. The report included the inaccurate reference to a "malignant tumor of genital tract," a condition Plaintiff has never had.

55. Foresters denied Plaintiff's insurance application based in whole or in part on MIB's inaccurate reporting.

56. In or around May 2023, Plaintiff requested a copy of his file disclosure from MIB.

57. MIB responded to Plaintiff by providing letter identifying itself as an "MIB Consumer File." The letter purported to list "[a]ny medical and personal information that MIB has in its database" about Plaintiff, as well as records of inquiries in the prior two years.

58. The MIB Consumer File included reference to the "Malignant tumor of Genital tract" but failed to provide additional information sufficient for Plaintiff to understand the true source of the inaccurate record and the intermediate vendor sources that provided the information.

59. MIB failed to identify the medical professional or service provider that purportedly provided the treatment and diagnosis, and even failed to identify the time period when the treatment allegedly took place. Instead, MIB simply stated: "Specifics unknown. Personal and medical information supplied by a service provider when the information is derived from records of treatment, claims, lab tests or healthcare operations. At some indefinite time in the past."

60. Furthermore, MIB indicated that the information provided did not include all of the information available in its databases, omitting the "codes" actually communicated to Fidelity and Foresters.

9

61. Without this information, Plaintiff was unable to identify precisely what information MIB communicated to Foresters and/or other third parties, or where to look for records which might assist in disputing the inaccurate medical information.

62. On or about May 16, 2023, Plaintiff sent a dispute to MIB regarding the inaccurate information on its report, including but not limited to the "malignant tumor of genital tract."

63. Upon information and belief, MIB did not conduct any reinvestigation of Plaintiff's dispute, but simply sent notice of the dispute to Fidelity.

64. Fidelity received MIB's notice of dispute, but failed to conduct a reasonable reinvestigation of Plaintiff's dispute. Upon information and belief, Fidelity failed to conduct any independent investigation into the accuracy of the purported medical record, including but not limited to contacting any medical professional or service provider.

65. Instead, on or about May 30, 2023, Fidelity sent Plaintiff a letter confirming that it would not make any changes to its reporting.

66. Upon information and belief, Fidelity communicated to MIB on or about May 30, 2023 that it would not make any changes to its reporting following Plaintiff's dispute.

67. On or about May 31, 2023, MIB parroted Fidelity's finding to Plaintiff, sending him a letter stating that it would make no changes based upon Plaintiff's dispute.

68. MIB's handling of Plaintiff's report, disclosure request, and dispute were not the result of error or mistake, but were consistent with its intentionally-adopted policies and procedures for preparing reports and responding to consumer requests and disputes.

69. Fidelity's handling of Plaintiff's dispute was likewise not the result of error or mistake, but was consistent with its intentionally-adopted policies and procedures for responding to notices of consumer disputes.

70. At all times pertinent hereto, Defendants' conduct was a result of their deliberate policies and practices, was willful, and carried out in reckless disregard for a consumer's rights as set forth under § 1681e(b), § 1681g(a), § 1681i(a), and § 1681s-2 of the FCRA, and further assumed an unjustifiable high risk of harm.

71. As of result of Defendants' conduct, Plaintiff has suffered damages in the form of (a) loss of insurance opportunity, (b) harm to reputation, (c) emotional distress, and (d) denial of statutorily-mandated information.

72. At all times pertinent hereto, Defendants each acted by and through their respective agents, servants and or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

### V.   CLASS ACTION ALLEGATIONS

73. Plaintiff brings this action on behalf of the following Classes for Defendant MIB's violations of the FCRA:

   a. **1681g Code Disclosure Class:** All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, about whom MIB provided a Consumer File Disclosure which did not include the codes actually provided to third party recipients of the MIB Reports included in the Disclosure.

   b. **1681g(a)(2) Source Disclosure Class:** All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, about whom MIB provided a Consumer File Disclosure which included one or more items of medical information identified as "supplied by a service provider" but for which MIB did not identify the service provider at issue.

   c. **1681i Failure to Reinvestigate Class:** All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action to whom MIB sent a

11

    communication substantially in the form of MIB's May 16, 2023 communication to Plaintiff.

  **d. <u>1681s-2(b) Failure to Reinvestigate Class</u>:** All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action about whom Fidelity received a notice of dispute from MIB or another consumer reporting agency, and to whom Fidelity sent a communication concerning the results of a reinvestigation request substantially in the form of Fidelity's May 30, 2023 communication to Plaintiff.

74. The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to MIB, Plaintiff avers upon information and belief that the members of the Classes number in the thousands.

75. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal question concerns whether MIB willfully and/or negligently violated the FCRA by failing to provide clear and accurate disclosure to consumers upon request, including disclosures of all sources of information as required by 15 U.S.C. § 1681g(a)(2), and by failing to conduct reinvestigations and simply forwarding disputes to the sources of information, and whether Fidelity willfully and/or negligently violated the FCRA by failing to conduct reinvestigations upon receipt of notice of consumer disputes from MIB and other CRAs.

76. Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

77. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

78. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

79. Whether MIB and/or Fidelity violated the FCRA can be determined by examination of each Defendant's policies and conduct and a ministerial inspection of their business records.

80. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against MIB and Fidelity is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from MIB and Fidelity's records.

## VI.   CLAIM *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681g(a)

### Plaintiff and the 1681g Code Disclosure Class vs. MIB

81. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

82. Pursuant to sections 1681n and 1681o of the FCRA, Defendant MIB is liable to the Plaintiff and the 1681g Code Disclosure Class for negligently and willfully failing to provide clear and accurate disclosure of all information in its files concerning consumers upon request.

Specifically, MIB failed to provide consumers with the codes communicated to end users of reports.

## COUNT II – VIOLATION *of* FCRA SECTION 1681g(a)(2)

### Plaintiff and the 1681g(a)(2) Source Disclosure Class vs. MIB

83. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

84. Pursuant to sections 1681n and 1681o of the FCRA, Defendant MIB is liable to the Plaintiff and the 1681g(a)(2) Source Disclosure Class for negligently and willfully failing to identify the original "service provider" sources from which MIB obtained medical information.

## COUNT III – VIOLATION *of* FCRA SECTION 1681i(a)

### Plaintiff and the 1681i Failure to Reinvestigate Class vs. MIB

85. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

86. Pursuant to sections 1681n and 1681o of the FCRA, Defendant MIB is liable to the Plaintiff and the 1681i(a)(6) Reinvestigation Results Class for negligently and willfully failing to conduct reinvestigations upon a consumer's dispute, instead simply forwarding the dispute to the insurer that reported the information and taking no steps to contact any medical professional or service provider.

## COUNT IV – VIOLATION *of* FCRA SECTION 1681s-2(b)

### Plaintiff and the 1681s-2(b) Failure to Reinvestigate Class vs. Fidelity

87. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

88. Pursuant to sections 1681n and 1681o of the FCRA, Defendant Fidelity is liable to the Plaintiff and the 1681s-2(b) Failure to Reinvestigate Class for negligently and willfully failing to conduct reasonable reinvestigations following receipt of a notice of a consumer's dispute of information Fidelity supplied from MIB or another CRA.

### COUNT V – VIOLATION *of* FCRA SECTION 1681e(b)

### Plaintiff vs. MIB

89. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

90. Pursuant to sections 1681n and 1681o of the FCRA, Defendant MIB is liable to the Plaintiff for negligently and willfully failing to maintain reasonable procedures to assure the maximum possible accuracy of information included on consumer reports. Specifically, MIB reported inaccurate medical information concerning Plaintiff based upon its standardized procedures which do not adequately assure that the medical conditions and procedures reported actually occurred, are described properly, and pertain to the individual who is the subject of the report.

### VII.    PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enter an order granting the following relief:

    A.    certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and her counsel to represent the Classes;

    B.    declaring that Defendants' conduct as alleged is in violation of the FCRA;

    C.    awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

D.   awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

E.   awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

F.   awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

G.   and granting such other and further relief as may be just and proper.

## VIII.   JURY TRIAL DEMAND

91. Plaintiff demands trial by jury on all issues so triable.

Dated: January 29, 2024                              Respectfully submitted,

**DANIEL MICHALSKI**, by his attorneys,

By:   */s/*Christopher M. Lefebvre BBO # 629056
Christopher M. Lefebvre
PO Box 479
Pawtucket, RI 02862
Tel: (401) 728-6060
Fax: (401) 728-6534

James A. Francis
John Soumilas
Lauren KW Brennan
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, 25th Floor
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com