UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DANIEL MICHALSKI, individually and on behalf of others similarly situated,

Plaintiff,

v.

MIB GROUP, INC., MIB, LLC, and FIDELITY SECURITY LIFE INSURANCE COMPANY,

Defendants.

CIVIL ACTION NO. 1:24-cv-10227-DJC

**MOTION OF MIB GROUP, INC. AND MIB, LLC FOR JUDGMENT OF DISMISSAL ON THE PLEADINGS**

INTRODUCTION

Pursuant to Fed. Rules Civ. P. 12(b)(1) and 12(c), the Defendants MIB GROUP, INC. and MIB, LLC (collectively, "MIB") move for an order granting judgment of dismissal as to the Plaintiff's claims against MIB. The Plaintiff lacks standing and the Court lacks jurisdiction, and the Complaint fails to state a viable claim.

PERTINENT PROCEDURE AND ALLEGATIONS

1. On January 29, 2024, the Plaintiff filed his Complaint. Doc. 3. MIB filed a timely Answer. Doc. 14. MIB now files this Motion for Judgment on the Pleadings.

2. These claims arise from consumer reporting provided to a prospective insurer and a consumer file disclosure provided to the Plaintiff by MIB (a data repository) pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 et seq.

3. The Plaintiff disputes the accuracy of some of the reported information, specifically, medical conditions he claims that he never had. Doc. 3 at ¶¶ 54, 58.

4. The Plaintiff alleges that his application for insurance to the co-defendant Fidelity Security Life Insurance Company ("Fidelity") was denied "in part" and his application for insurance through a non-party, Foresters, was denied "in whole or in part" due to the reporting of MIB. Doc. 3 at ¶¶ 50, 55.

5. On or about May 16, 2023, the Plaintiff sent MIB a letter disputing certain information in the disclosure. Doc. 3 at ¶ 62; Doc. 14 at ¶ 62.

6. Dissatisfied with MIB's response, he alleges that MIB is liable to him under Sections 1681(n) (civil liability for willful noncompliance) and 1681(o) (civil liability for negligent noncompliance) of the FCRA for violating the following provisions:

a. Section 1681g(a) -- for not including in the disclosure the proprietary alpha-numeric codes communicated to end users of his consumer report (Count I);

b. Section 1681g(a)(2) -- for not stating in the disclosure the source provider from which MIB obtained medical information (Count II);

c. Section 1681i(a) -- for not contacting his medical providers upon receiving his letter disputing certain information (Count III); and

d. Section 1681e(b) -- for not maintaining a reasonable procedure in assuring accuracy of its consumer reports (Count V).

7. The Plaintiff alleges that, as a result of these violations, he has "suffered damages in the form of: (a) loss of insurance opportunity; (b) harm to reputation; (c) emotional distress; and (d) denial of statutorily-mandated information." Doc. 3 at ¶¶ 70-71.

These allegations state no claim. As a threshold matter, the Plaintiff lacks standing under Article III of the Constitution to pursue such claims (and the Court lacks jurisdiction) because the facts as pled do not demonstrate any concrete injury that is fairly traceable to alleged statutory violations. Further, controlling caselaw and the CFPB clarify that MIB had no obligation to

disclose the proprietary, alpha-numeric codes that it and Fidelity used and that are for internal use only and meaningless to the Plaintiff. And the theories raised in Counts I, II, and V state no claim for additional reasons. MIB therefore requests that this Court grant this Motion for judgment on the pleadings and dismiss the Plaintiff's claims against it with prejudice.

STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) requires the Court to examine the undisputed factual record and the defendant's answer to determine the merits of the claims as pled. Pollard v. Law Office of Mandy L. Spaulding, 967 F. Supp. 2d 470, 474 (D. Mass. 2013) aff'd, 766 F.3d 98 (1st Cir. 2014); Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 233 (D. Mass. 2010). A 12(c) motion, unlike a 12(b)(6) motion, "implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). Otherwise, "[a] Rule 12(c) motion 'is treated much like a Rule 12(b)(6) motion to dismiss.'" Walsh, 762 F. Supp. 2d at 233 (quoting Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)). Because the Fed. R. Civ. P. 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's behalf. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

To survive a motion for judgment on the pleadings, the complaint must contain factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Perez-Acevedo, 520 F.3d at 29 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or

inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)). Rule 12(c) permits a judgment of dismissal based on the pleadings alone. Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993), cert. denied, 520 U.S. 1228 (1997).

## ARGUMENT

### I. THE PLAINTIFF LACKS STANDING AND THE COURT LACKS JURISDICTION.

The Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing and subject matter jurisdiction. Standing and jurisdiction are threshold questions. "[I]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992).The burden of alleging facts necessary to support standing rests squarely with the plaintiff. Id. at 114.

To survive a motion for judgment on the pleadings, a plaintiff must plead facts plausibly showing that: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was caused by the defendants; and (3) that the injury would likely be redressed by judicial relief. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2200 (2021) (plaintiffs must demonstrate concrete harm; "No concrete harm, no standing."); Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1550 (2016) (consumer failed to satisfy the injury-in-fact demands of Article III standing, alleging only a mere procedural violation of the FCRA). "[A]t the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element." Id. A concrete injury must be "real," not "abstract." Id. at 1548.

The Spokeo Court made clear that a technical violation of a statute, divorced from concrete harm, does not satisfy the injury-in-fact requirement. Id. On remand, the Ninth Circuit clarified that, in FCRA cases, an alleged inaccuracy must cause or at least materially risk an articulable,

real-world injury. Robins v. Spokeo, Inc., 867 F.3d 1108, 1115-16 (9th Cir. 2017). The same rule governs in this Circuit. See Wiener v. MIB Group, Inc., 86 F. 4th 76, 84 (1st Cir. 2023)(FCRA's grant of statutory right to sue does not by itself create standing). Accord Plazzi v. FedEx Group Pack. Sys., 52 F. 4th 1, 4 (1st Cir. 2022)(statutory violation and injury in fact are required to satisfy standing requirement). Acord Strubel v. Comenity Bank, 842 F.3d 181, 190 (2d Cir. 2016) ("[E]ven where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.").

The Plaintiff's "injury" here is the purported violation of a procedural right to allegedly "statutorily mandated" information; an alleged loss of insurance opportunity; unspecified harm to reputation; and alleged emotional distress. But none of these damages constitute "injury in fact" that is concrete, particularized, and actual or imminent. None of the purported losses satisfy Rule 12 and the governing pleading standard.

To begin with, regarding the denial of allegedly mandated information (the proprietary medical codes used by the defendants, and the Plaintiff's original medical providers) as concrete harm, Spokeo and TransUnion hold that a mere abstract violation of a statutory right is insufficient to establish standing. But only an abstract violation is alleged here. Furthermore, no sufficient basis to find causation of concrete harm by MIB is alleged. There is no allegation of adverse effects caused by nondisclosure of the meaningless alpha-numeric codes corresponding to the substantive information that the Plaintiff did receive and review, or of nondisclosure of the Plaintiff's original medical providers (who he of course knows). And because an abstract violation is harmless, it creates no standing. E.g., Wiener, 86 F. 4th at 84 (citing cases). Note that the causal chain on which a plaintiff's allegations rest must amount to "something more than an ingenious academic exercise in the conceivable." It must be traceable to the defendant's conduct. United

States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 (1973); Katz v. Pershing, LLC, 672 F.3d 64, 71, 76 (1st Cir. 2012). ("[T]he opposing party must be the source of the harm.") No such causal linkage to MIB is alleged here.

As for alleged emotional distress, the Plaintiff's passing, conclusory reference to distress is insufficient for the injury-in-fact requirement. Courts require more than a makeweight allegation of emotional distress in order to confer standing. See Maddox v. Bank of New York Mellon Tr. Co., N.A., 19 F.4th 58, 66 (2d Cir. 2021) ("A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing."); Pierre v. Midland Credit Mgmt., Inc., 29 F.4th 934, 939-40 (7th Cir. 2022), cert. denied, 143 S. Ct. 775 (2023) (psychological state induced by debt collector's letter consisting of worry, confusion, and emotional distress did not confer standing under the Fair Debt Collection Practices Act); McIntyre v. Rentgrow, Inc., Mo. 18-cv-12141, 2021 U.S. Dist. LEXIS 157939 ( D. Mass. July 22, 2021)(FCRA claimant must describe injury in reasonable detail). But such particularized allegations are not present.

Similarly, naked assertions of reputational harm "fall short of plausibly establishing injury." McNaught v. Nolen, 76 F.4th 764, 771 (8th Cir. 2023). Rather, like any claim of injury-in-fact, reputational harm and emotional distress must be "concrete and particularized" to support standing. Spokeo, 578 U.S. at 339. See also TransUnion, 141 S. Ct. at 2209-2214 (admittedly erroneous credit-report information that was never disclosed to third parties did not cause concrete harm). There can be no serious or plausible allegation here that a private, unpublicized denial of insurance coverage for the Plaintiff somehow caused reputational harm. Contrast Meuse v. National PI. Serv., LLC, No. 21-cv-1153, 2022 U.S. Dist. LEXIS 119572 (D. Mass. Jul. 7, 2022)(reputational harm leading to job loss.)

Finally, the Plaintiff's allegation that he sustained a "loss of insurance" as a result of MIB's alleged conduct does not satisfy his pleading burden. The Plaintiff does not allege that he lost insurance coverage that he once had because of the conduct of MIB. Nor does (or can) he allege that, but for MIB's actions, he would in fact have received the subject insurance coverage. Rather, the allegations fall short of this, and are speculative and attenuated -- he says only that other parties (prospective insurers) denied his applications for new coverage, but for reasons based only "in part" on MIB's consumer reporting. Doc. 3 at ¶¶ 50, 55. Manifestly, the Plaintiff is not sure exactly why his applications were denied; and he obviously cannot say that they ever would have been approved. Not only are his allegations indefinite and conclusory, but they describe no imminent or actual harm as a result of/caused by action/inaction by MIB, as opposed to by prospective insurers, or due to some other cause altogether.

To create standing, a threatened injury must be "imminent" or "actual" when the plaintiffs filed their complaint. Amrhein v. eClinical Works, LLC, 954 F.3d 328, 332 (1st Cir. 2020); Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017); Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013). The same test applies where a plaintiff relies on costs or burdens that have been, or will be, incurred to avoid or mitigate a future harm. A plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not . . . impending." Adams v. Gissell, No. CV 20-11366-PBS, 2021 WL 2786277, at *4 (D. Mass. May 24, 2021). Moreover, nothing in the FCRA guarantees a right to insurance coverage, which is a necessary implication of the Plaintiff's position. See and compare Goldberg v. Uber Techs., Inc., No. CIV.A. 14-14264-RGS, 2015 WL 1530875, at *2 (D. Mass. Apr. 6, 2015) (rejecting plaintiff's claim that the CRA's conduct caused him to lose driving opportunity with Uber, because "compliance with the FCRA does not guarantee a right to employment.").

The Plaintiff has not demonstrated how any of MIB's alleged omissions (not providing codes; not providing original medical sources; not contacting original medical providers; and not confirming the objective, metaphysical accuracy of the disputed reporting) caused him to lose an insurance opportunity, or to sustain emotional distress and/or reputational harm. Even assuming that the Plaintiff's Complaint describes a bare procedural violation, there are no allegations of harm or causation sufficient to confer standing.

## II. IN ANY EVENT, MIB IS NOT REQUIRED BY SECTION 1681g OF THE FCRA TO DISCLOSE PROPRIETARY, MEANINGLESS CODES (COUNT I).

The Plaintiff mistakenly asserts that MIB violated Section 1681g(a) because it did not disclose to him the proprietary, alpha-numeric codes communicated to end users of the reports (but meaningless to consumers). Doc. 3 at Ct. I, ¶ 82. Section 1681g(a)(1) requires that "all information in the consumer's file at the time of the request" shall be disclosed. But Circuits that have considered this requirement in similar circumstances have rejected an interpretation of this section that requires the disclosure of any and all information ever retained by a consumer reporting agency ("CRA"), including internal-only use administrative and coding data. See, e.g., Tailford v. Experian Info. Sols., Inc., 26 F.4th 1092, 1103-04 (9th Cir. 2022) (finding that "all information in the consumer's file" upon consumer's request did not require disclosure of information in CRA's internal-only administrative reports); Shaw v. Experian Info. Sols., Inc., 891 F.3d 749, 760 (9th Cir. 2018) (disclosure that did not include proprietary software code corresponding to substantive information where the information itself was contained in the report satisfied Section 1681g(a)(1)).

In Shaw, the Court squarely rejected the consumer's argument (which was the same argument made by the Plaintiff here) that Experian's disclosure violated Section 1681g(a)(1) because it did not include its proprietary software codes. The Court held that disclosure of the codes would actually contradict the requirement of the provision:

> Indeed, requiring Experian to provide its proprietary coded data in a consumer disclosure would contradict § 1681g(a)'s requirement that the disclosure be "clear." A consumer who received a disclosure with code 9 on it would likely not be able to "compare the disclosed information from the credit file against the consumer's personal information in order to ... determine the accuracy of the information set forth in her credit file" because the average consumer would not know what code 9 means. In order for a consumer to understand code 9, Experian would have to report account status code 68 and release its complicated technical manual, which would further confuse unsophisticated consumers. Thus, while disclosing code 9 would be "accurate," it would no longer be "clear" and comprehensible to the average consumer.

Id. at 760.

Significantly, just like the disclosure to the Plaintiff here, the substantive consumer disclosure in Shaw contained the information corresponding to the codes. The appellant's complaint there was simply that the numeric codes themselves were unlawfully withheld. The Court rejected that charge and held otherwise. Id. at 759. Other courts have ruled to the same effect. For example, the Seventh Circuit has held that Section 1681g requires a CRA's disclosure to be clear and accurate, but it does not require the disclosure of internal-only information. See Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007) (particular format not mandated so long as disclosure is complete). See also and compare Mintun v. Equifax Info. Serv., LLC, 535 F. Supp. 3d 988, 1000-1001 (D. Nev. 2021) (disclosure of codes alone is non-compliant; "if the . . . consumer won't know what the code means . . . then the disclosure is not clear" as required by Shaw). The logic of these decisions controls here.

This rule compels dismissal of this claim in this case because the detailed disclosure issued to the Plaintiff here provided the full meaning and substance of the disputed codes, just like the disclosure in the Shaw case. This is evident from the Plaintiff's own allegations as to his dispute of the accuracy of the disclosure. Doc. 3 at ¶¶ 48, 49, 58. The Plaintiff's claim is that MIB's "specific" conduct that violated Section 1681g(a) was its failure to include the codes corresponding to the information that he admittedly received in the disclosure and reviewed. Id. In other words,

he is complaining that he did not receive the same information in plain-language format and also in coded format. His own allegations thus confirm that he received clear descriptions of the conditions, and the only thing missing was the matching codes. The caselaw holds that he is entitled to the substantive information, not the codes.

In addition, the CFPB's recent Advisory Opinion: Fair Credit Reporting; File Disclosure, 12 CFR Part 1022, cited by the Plaintiff in the complaint (Doc. 3 at ¶ 29), is fully consistent with this conclusion, and even adopts and follows the analysis in the Shaw decision. (A true and accurate copy of the Advisory is attached to this Motion as Exhibit A.) In its advisory, the CFPB acknowledged that the FCRA's requirement of disclosure of consumer file information is a "critical component" of the statute's dispute protocol. Advisory, 12 CFR Part 1022 at p. 4. Disclosure serves the statutory purpose of allowing consumers to review their files, determine whether they are incomplete or inaccurate and, if necessary, file disputes. Id. at p. 4 & n. 15. Disclosures must be accessible and understandable to the "average consumer," and must "clearly and accurately" disclose the requested file information. Id. at p. 9 (citing and following Shaw, 891 F. 3d at 759; average consumer must be able to understand the disclosure).

In accordance with this statutory goal, the CFPB opined that disclosure of file "summaries" is insufficient. Rather, the FCRA recommends that CRA's disclose "the information that form[s] the basis of the summarized information . . . " Id. at pp. 9-10 (emphasis added). This is so because, as the Shaw court noted, nondisclosure of the information/records upon which summaries are based would "under[mine] the consumer's right to dispute any incomplete or accurate information contained in their file." Id. at p. 11.

Thus, the CFPB has endorsed the decision and the dispositive logic of the Court in Shaw, and clarified that the FCRA and consumers require substantive information, not opaque internal codes and summaries. To put it another way, the courts and the CFPB agree that the use of

"summaries," such as cryptic, proprietary, alpha-numeric codes, are inimical to the FCRA's goals because they compromise clarity and accuracy, and do not aid consumers. See Mintun, 535 F. Supp. at 1001-1002 ("cryptic, numeric codes . . . deprived [the Plaintiff] of any ability to determine [the] accuracy [of the disclosure]," contrary to FCRA's purpose). As such, MIB's alleged nondisclosure of meaningless proprietary codes here necessarily gives rise to no claim.[1]

## III. IN ANY EVENT, MIB'S SOURCE DISCLOSURE COMPLIED WITH SECTION 1681g(a)(2) (COUNT II).

The Plaintiff asserts that MIB has violated Section 1681g(a)(2) because it did not identify the original service-provider sources that treated the Plaintiff. Doc. 3 at Ct. II, ¶ 84. The Plaintiff is wrong. The FCRA requires that "[e]very consumer reporting agency shall, upon request, ... clearly and accurately disclose to the consumer: (1) [a]ll information in the consumer's file at the time of the request ...; and (2) [t]he sources of the information ...." 15 U.S.C. § 1681g(a). Section 1681g(a)(2) requires disclosure of: "[t]he sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed." The Plaintiff acknowledges that the co-defendant, Fidelity, is "one of MIB's sources of information." Doc. 3 at ¶ 5. However, the Plaintiff also alleges that MIB "fails to identify the source(s) of such medical information, such as the treating or diagnosing medical professional." Doc. 3 at ¶ 23.

The FCRA does not define the term 'source.' Because Congress enacted the FCRA in 1970, the Court must consider the ordinary meaning of the word 'source' as at that time. In 1970, "source" meant "a thing that originates; ... an origin[, or a] place where something is found or whence it is taken or derived." Black's Law Dictionary at 1568 (Rev. 4th. ed. 1968). This definition does not support the Plaintiff's argument that MIB has some duty to contact the Plaintiff's original

[1] The nondisclosure of the codes also is harmless, as described above in Section I.

medical providers (even if it could do that in light of applicable privacy rules). Fidelity is undeniably a "source" under this definition. The statute does not require that MIB identify and disclose all potential, theoretical sources of information about the Plaintiff. See also Shimon v. Equifax Info. Serv., LLC, 994 F. 3d 88, 93 (2d Cir. 2021)(CRA not required to disclose all third-party information vendors); Kelly v. RealPage, Inc., 239 F. Supp. 3d 374, 379 (E.D. Pa. 2021) (CRA's decision not to disclose third-party vendor source was consistent with Section 1681g).

Here, the disclosed source of MIB's information was Fidelity, a "furnisher" of information under the FCRA. Doc. 3 at ¶ 41. (Another source – also disclosed to the Plaintiff – was non-party Milliman Solutions, LLC.) The Plaintiff says that MIB does not conduct reasonable reinvestigations upon receiving a consumer dispute, but rather, "forwards consumer disputes on to furnishers of information." Doc. 3 at ¶ 36. The Plaintiff's allegations against Fidelity include its claimed failure independently to investigate the information it reports to MIB. Doc. 3 at ¶ 43. But through these very allegations, the Plaintiff documents his knowledge that the source of the information in his consumer disclosure was Fidelity. (And it is undisputed that Fidelity disclosed Milliman's role and reporting to the Plaintiff.) As such, the claim that MIB violated Section 1681g(a)(2) by not disclosing certain unknown original medical providers is not actionable.[2]

## IV. IN ANY EVENT, MIB'S INITIAL INVESTIGATION OF THE PLAINTIFF'S REQUEST WAS REASONABLE AS A MATTER OF LAW (COUNT V).

The Plaintiff alleges that MIB violated Section 1681e(b) because it negligently and willfully failed to maintain reasonable procedures to assure the maximum possible accuracy of information included on consumer reports. Doc. 3 at Ct. V, ¶ 90. Section 1681e(b) requires that

[2] Two points bear mention here. First, it is undisputed that MIB did not have, and therefore could not disclose, the names of treating/diagnosing medical providers. Second, Milliman is also a CRA, and it was open to the Plaintiff to contact it and submit a dispute. But he filed suit without doing that.

"[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." But voluminous authority holds that this section does not impose strict liability for inaccurate entries in consumer reports. Rather, the preparer is held only to a duty of reasonable care. And no violation of that duty of reasonableness is sufficiently alleged here.

"[R]easonable care is determined by reference to what a reasonably prudent person would do under the circumstances." Spence v. TRW, Inc., 92 F.3d 380, 383 (6th Cir. 1996). See also Wright v. Experian Info. Sols., Inc., 805 F.3d 1232, 1240 (10th Cir. 2015) (CRA followed reasonable procedure under Section 1681e(b) in reporting tax lien information where information collected from recorder's website and sent to the CRA by LexisNexis was not inaccurate on its face, inconsistent with other information, or obtained from a source known to be unreliable); Henson v. CSC Credit Servs., 29 F.3d 280, 285 (7th Cir. 1994) (as a matter of law, a CRA not liable under the FCRA for reporting inaccurate information obtained from a presumptively reliable source absent prior notice of inaccuracy from the consumer); Lazarre v. JPMorgan Chase Bank, N.A., 780 F. Supp. 2d 1320, 1329 (S.D. Fla. 2011) (claim dismissed for failure to allege that CRA did not follow reasonable procedures in relying upon information furnished to it by furnisher Chase); Taylor v. Tenant Tracker, Inc., 2011 WL 5402388, at *4 (E.D. Ark. 2011) (Section 1681e(b) claim dismissed because plaintiff failed to allege a breach of reasonable procedures to ensure accuracy of information in consumer report derived from court records for a defendant with the same name as the plaintiff). Rather, the role of the CRA is to "simply collect and report information furnished by others." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 891 (9th Cir. 2010).

Here, there is no allegation that MIB received prior notice from the Plaintiff about any disputed information before compiling the disclosure in response to his request. Nor is it fairly

alleged that Fidelity and Milliman were unreliable sources, or that the disputed reporting was contradicted by other available information, or that the information was inaccurate on its face. The Plaintiff's bland claim is that MIB violated Section 1681e(b) by somehow not assuring that the medical conditions and procedures reported in the disclosure "actually occurred, are described properly, and pertain to the individual who is the subject of the report" (Doc. 3 at ¶ 90). Apart from describing an impossible burden for any CRA to carry, this allegation is not sufficient under the governing decisions. As noted above, the FCRA imposes no duty on the CRA to inquire further than the furnisher (and the Plaintiff was free to follow up with the furnisher's source – Milliman).

CONCLUSION

For all of the foregoing reasons, this Motion should be granted, and all claims as against MIB dismissed.

MIB GROUP, INC. and MIB, LLC,
By their Attorneys,

John J. O'Connor
BBO #555251
Nicole L. Carnevale
BBO No. 710172
Peabody & Arnold, LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02110-2261
Telephone: (617) 951-2100
joconnor@peabodyarnold.com
ncarnevale@peabodyarnold.com

Dated: July 2, 2024

LOCAL RULE 7.1 CERTIFICATION

I, John J. O'Connor, attest and certify that the parties conferred in compliance with Local Rule 7.1 prior to the filing of this Motion.

John J. O'Connor

**CERTIFICATE OF SERVICE**

I, John J. O'Connor, hereby certify that on this 2nd day of July, 2024, I served the foregoing document by electronically filing with the Court and by email to:

Christopher M. Lefebvre
P.O. Box 479
Pawtucket, RI 02862
chris@lefebvrelaw.com

Michael F. Connolly
Rubin and Rudman LLP
53 State Street, 15th Floor
Boston, MA 02109
mconnolly@rubinrudman.com

James A. Francis
John Soumilas
Lauren K.W. Brennan
Francis Mailman Soumilas, P.C.
1600 Market Street, 25th Floor
Philadelphia, PA 01903
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

John J. O'Connor

2678077
16759-209121