**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DANIEL MICHALSKI, on behalf of himself and all others similarly situated,** | ) ) ) ) |
| **Plaintiffs,** | ) ) ) |
| **v.** | ) ) ) |
| | **Case No. 24-cv-10227-DJC** |
| **MIB GROUP, INC., et al.,** | ) ) ) |
| **Defendants.** | ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                    **January 14, 2025**

## I.    Introduction

Daniel Michalski ("Michalski") filed this putative class action lawsuit against Defendants MIB Group, Inc. and MIB, LLC (collectively "MIB") and Fidelity Security Life Insurance Company ("Fidelity") (collectively, "Defendants"), alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") arising out of allegedly incorrect information on his consumer report.  D. 1.  MIB and Fidelity have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c).  D. 33; D. 34.  For the reasons stated below, the Court DENIES MIB's motion, D. 33, and ALLOWS Fidelity's motion, D. 34.

## II.    Standard of Review

### A.    Rule 12(b)(1) Dismissal for Lack of Jurisdiction

When confronted with a Rule 12(b)(1) motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences

1

in favor of the plaintiff." <u>Aversa v. United States</u>, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995)).  The Court  may widen its gaze, however, and look beyond the pleadings to determine subject matter jurisdiction.  <u>Martínez-Rivera v. Commonwealth of Puerto Rico</u>, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the court can "rely on facts outside the pleadings" to decide a Rule 12(b)(1) motion).  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." <u>Murphy</u>, 45 F.3d at 522 (quoting <u>Taber Partners, I v. Merit Builders, Inc.</u>, 987 F.2d 57, 60 (1st Cir. 1993)).

Standing is a jurisdictional issue, <u>see</u> <u>P.R. Tel. Co. v. T-Mobile P.R. LLC</u>, 678 F.3d 49, 57 (1st Cir. 2012), and, accordingly, challenges to standing are properly considered under Rule 12(b)(1).  <u>See</u> <u>Kolancian v. Snowden</u>, 532 F. Supp. 2d 260, 261 (D. Mass. 2008).

**B.     <u>Rule 12(c) Motion for Judgment on the Pleadings</u>**

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion.  <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 54 (1st Cir. 2006).  To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in his favor.  <u>Pérez-Acevedo v. Rivero-Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008) (internal quotation marks citation and omitted).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings as a whole, including the answer.  See Aponte-Torres, 445 F.3d at 54–55.  Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true.  See Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010).  In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice."  R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).  Still, "[l]ike Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment."  Aponte-Torres, 445 F.3d at 54.

## III.    Factual Background

Unless otherwise indicated, the following summary is based on the allegations in complaint, D. 1, and the undisputed facts in MIB's and Fidelity's answer.  D. 14; D. 18.

On or around January 17, 2022, Michalski applied for life insurance with Fidelity, which obtained a copy of his consumer report from MIB.  D. 1 ¶¶ 46-47.  In connection with Michalski's application, Fidelity also obtained additional information concerning Michalski's medical history, that included an assertion that he had a "malignant tumor of [the] genital tract."  Id. ¶ 48; see D. 18 ¶ 48.  Michalski has never been diagnosed or treated for cancer and alleges that information on his report was inaccurate.  D. 1 ¶ 49.  Fidelity allegedly denied Michalski's life insurance application based in part upon MIB's January 2022 report.  Id. ¶ 50.  A few days later, on January 21, 2022, Fidelity provided information to MIB for inclusion on future MIB reports, including Michalski's medical history and reference to a "malignant tumor of [the] genital tract."  Id. ¶ 51.

On or around April 14, 2023, Michalski applied for life insurance with the Independent Order of Foresters ("Foresters"). Id. ¶ 52. In connection with his application, Foresters obtained a consumer report from MIB, which included the allegedly inaccurate information that Michalski had a "malignant tumor of [the] genital tract." Id. ¶¶ 53-54. Foresters denied Michalski's application based in whole or in part upon MIB's consumer report. Id. ¶ 55.

Following this denial, in May 2023, Michalski requested a copy of his file from MIB. Id. ¶ 56; see D. 14 ¶ 56. MIB provided a MIB Consumer File which listed medical and personal information MIB had in its database and records of inquiries for the past two years. D. 1 ¶¶ 56-57. The MIB Consumer File included a reference that Michalski had a "malignant tumor of [the] genital tract" but did not contain information concerning the source of that information or other details, such as the medical service provider, time-period of the treatment and diagnosis, and the file indicated "Specifics unknown" based upon "some indefinite time in the past." Id. ¶¶ 58-59. The information provided also did not purportedly contain the "codes" that were communicated to Fidelity and Foresters concerning Michalski's file. Id. ¶ 60.

On May 16, 2023, Michalski filed a dispute with MIB regarding the inaccurate information on his report, and specifically the reference to the inaccurate medical information stating he had been treated for cancer. Id. ¶ 62; see D. 14 ¶ 62. MIB notified Fidelity of the dispute. D. 1 ¶ 63. On May 30, 2023, Fidelity sent a letter to Michalski indicating that it was not going to make changes to its reporting and communicated the same intentions to MIB. Id. ¶¶ 65-66; see D. 18 ¶¶65-66. On May 31, 2023, Michalski also received a letter from MIB stating that it was not going to make any changes to Michalski's consumer report. D. 1 ¶ 67.

IV.    **Procedural History**

On January 29, 2024, Michalski instituted this putative class action against MIB and Fidelity asserting claims against MIB for violations of the FCRA pursuant to § 1681(g)(a) for failing to disclose all information, and specifically the "codes" communicated to end users of the report upon consumer request (Count I), § 1681(g)(a)(2) for failing to disclose the original "service provider" source of MIB's information (Count II), § 1681(i) for failing to reinvestigate upon notice of disputed information (Count III) and § 1681(e)(b) for negligent and willful failure to maintain reasonable procedures to ensure accurate information (Count V) and a claim against Fidelity for violation of the FCRA pursuant to § 1681s-2(b) for negligently and willfully failing to reinvestigate upon notice of disputed information, (Count IV). D. 1. MIB and Fidelity have now moved for judgment on the pleadings as to Michalski's claims. D. 33; D. 34. The Court heard the parties on the pending motions and took the matter under advisement. D. 55.

V.    **Discussion**

A.    <u>**Defendants' Rule 12(b)(1) Motion for Lack of Standing**</u>

"The federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case." <u>United Seniors Ass'n, Inc. v. Philip Morris USA</u>, 500 F.3d 19, 23 (1st Cir. 2007). Article III restricts a federal court's jurisdiction to actual cases and controversies. U.S. Const. art. III, § 2. An actual "case or controversy" exists when "the party seeking to invoke the court's jurisdiction (normally, the plaintiff) has a 'personal stake in the outcome' of the claim asserted." <u>Pagán v. Calderón</u>, 448 F.3d 16, 27 (1st Cir. 2006) (quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962)). To satisfy the personal stake requirement, three elements must be met: "[1] a would-be plaintiff must demonstrate a concrete and particularized injury in fact, [2] a causal connection that permits tracing the claimed injury to the defendant's actions, and

[3] a likelihood that prevailing in the action will afford some redress for the injury." Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006); Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (recognizing that "plaintiff must establish each part of a familiar triad: injury, causation, and redressability").

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Although "[t]he most obvious" concrete harms are tangible (e.g., physical or monetary), "[v]arious intangible harms can also be concrete." TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021). These include injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." Id.

Michalski alleges that he has suffered concrete injuries of: (1) loss of insurance opportunity, (2) harm to reputation, (3) emotional distress and (4) denial of statutorily mandated information from Defendants' conduct. D. 1 ¶ 71. Defendants challenge (1) whether any of the purported harms Michalski alleges are sufficient concrete injuries to confer standing and (2) whether there is no causal connection between any injury and the conduct Michalski alleges. D. 33 at 4-8; D. 35 at 3-4.

### 1.    *Michalski Lacks Standing to Pursue his Claims Against Fidelity*

The parties primarily dispute whether Michalski has Article III standing based upon loss of insurance opportunity and harm to reputation where liability for a furnisher, like Fidelity, is only triggered after notice of a dispute. See D. 35 at 3-4; D. 39 at 3-6; D. 46 at 1-4. Fidelity asserts

that even if those were cognizable harms, Michalski has failed to plead causation because Fidelity's alleged failure to reinvestigate occurred after those alleged harms.  See D. 35 at 4; D. 46 at 1-4.

The FCRA requires that furnishers of information to credit reporting agencies ("CRAs"), such as Fidelity in this context, "may not provide inaccurate information to consumer reporting agencies[] and also have specific duties in the event of a dispute over furnished information." Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 35 (1st Cir. 2010) (internal citations omitted). Pursuant to the FCRA, when a consumer notifies a CRA of a dispute regarding their credit report and the CRA reports the dispute to the furnisher as required, the furnisher must "conduct an investigation with respect to the disputed information," review all the relevant information provided by the CRA and "report the results of the investigation" to the CRA.  15 U.S.C. § 1681s-2(b)(1); Chiang, 595 F.3d at 36.  If the information disputed by the consumer is found to be inaccurate, incomplete or cannot be verified, for purposes of reporting to a consumer reporting agency, the furnisher should promptly either modify the information, delete or permanently block the reporting of that information.  15 U.S.C. § 1681s-2(b)(1)(E); Chiang, 595 F.3d at 36.  Furnisher liability accrues under the FCRA only after the furnisher receives notice of the consumer's dispute of his consumer report's accuracy.  See Loughry v. M&T Mortg. Corp., No. cv 21-3729, 2023 WL 5635623, at *6 (E.D. Pa. Aug. 31, 2023) (reasoning that plaintiff has not alleged Article III standing where the denial preceded notice of dispute because "Congress has not directed denials of credit and furnishment of information to third-parties predating a tenant's dispute letter are actionable under section 1681s-2(b)(1)"); Barrepski v. Cap. One Bank, 439 F. App'x 11, 12 (1st Cir. 2011) (unpublished) (reasoning that "furnisher's obligation to conduct an investigation, and its period of liability, begins ONLY upon the furnisher's receipt of notice FROM THE CRA")

(emphasis in original); <u>Ruffin-Thompkins v. Experian Info. Sols., Inc.</u>, 422 F.3d 603, 608 (7th Cir. 2005) (recognizing that "[n]o reinvestigation is required until the credit reporting agency is notified of an error").

Here, Fidelity's liability period only began on or about May 16, 2023 when it was notified of Michalski's dispute.  D. 1 ¶¶ 62-64.  Even as alleged, this notification of the dispute came after the January 2022 and April 2023 denials of life insurance, <u>id.</u> ¶¶ 46-50, 52-55, and therefore, whether Fidelity failed to reinvestigate properly could not have caused Michalski's harm from the denial of these policies.  <u>See</u> <u>Loughry</u>, 2023 WL 5635623, at *8 (concluding no Article III standing against furnisher because plaintiff had suffered credit denials before she submitted dispute letters to the credit reporting agencies).

Michalski argues, however, that he has sufficiently alleged standing because Fidelity "re-reported" inaccurate information to MIB after it failed to properly investigate that reaffirmed inaccurate information, which amounts to a publication that satisfies standing predicated upon emotional distress and reputational harm.  D. 39 at 5.  Michalski relies upon <u>TransUnion LLC</u>, 594 U.S. at 432, to argue that a furnisher's third-party communication of misleading information constitutes a publication similar to defamation that confers standing.  D. 39 at 3-5.  In <u>TransUnion LLC</u>, the Supreme Court considered whether an inaccuracy contained in a consumer's internal credit card file that labeled the plaintiffs as a "potential terrorist" constituted a concrete injury sufficient for Article III standing when that information was not provided to any potential creditors. <u>Id.</u> at 433-434.  The Court concluded that for the plaintiffs whose information was disseminated to third parties that there was a concrete injury from reputational harm.  <u>Id.</u> at 433.  By contrast, the Court concluded that the class of plaintiffs whose information had never been disseminated lacked standing because the "mere presence of an inaccuracy in an internal credit file, if it is not

disclosed to a third party, causes no concrete harm." Id. at 434.  The Court reasoned that any potential harm would be the risk of future harm, which "standing alone, cannot qualify as a concrete harm — at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." Id. at 436 (emphasis in original).  In assessing the risk of future harm, however, the Court noted that the plaintiffs had not demonstrated that their risk had ever materialized, meaning that inaccurate information in their credit files were ever provided to third parties or caused a denial of credit, and therefore did not have standing.  Id. at 437.

Michalski also relies upon Ewing v. MED-1 Sols., LLC, 24 F.4th 1146, 1152 (7th Cir. 2022) in which that court considered whether plaintiffs suffered a concrete injury for claims brought under the Fair Debt Collection Practices Act ("FDCPA"), when the debt collectors communicated false information about plaintiffs to a credit-reporting agency.  D. 39 at 4.  In Ewing, the court concluded that the plaintiffs had standing because the FDCPA aims to prevent abuses committed by debt collectors, and the statutory violation was akin to defamation as there was evidence of dissemination of inaccurate information.  Ewing, 24 F.4th at 1153.  In doing so, the court distinguished TransUnion LLC, reasoning that "different statutes are implicated and the subject whom the applicable statutes aim to regulate are different" as the FCRA seeks to regulate the procedures used by CRAs whereas the FDCPA aims to prevent abuses committed by debt collectors such as the reporting of false information.  Id.; see D. 46 at 3-4 (citing cases).

Moreover, Michalski has not cited a case from the First Circuit applying Ewing's reasoning to the FCRA and other federal courts are split on whether Ewing's reasoning is applicable in the FCRA context.  See, e.g., Figueroa v. Cap. One, N.A., No. 23-cv-482 (WJM), 2024 WL 209058, at *3 (D.N.J. Jan. 19, 2024) (recognizing that federal courts are split on whether dissemination of a defamatory statement to a credit reporting agency creates potential harm and joining other

districts courts that have applied Ewing's analysis that dissemination constitutes defamatory publication because the "TransUnion Court did not specify that third-party publication under the FCRA was limited only to potential creditors"); Spira v. Trans Union, LLC, No. 21-cv-2367, 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022) (reasoning that plaintiff failed to allege standing because even though plaintiff has alleged that the allegedly inaccurate information as to his HSBC account was disseminated to a third party, Equifax, from HSBC, a CRA was not the type of third party that was contemplated in TransUnion LLC).

As an initial matter, the Court notes that Michalski does not allege that Fidelity "re-reported" inaccurate information but rather alleges that Fidelity communicated that it would not make any changes to the reporting following the notice of dispute. See D. 1 ¶ 66. Even assuming arguendo that Fidelity's "re-reporting" to MIB constituted dissemination, Michalski has not alleged that there has been any dissemination of his consumer report that has caused him concrete harm since Fidelity had notice of the dispute. Cf. Hines v. Equifax Info. Servs. LLC, No. 19-cv-6701, 2024 WL 4132333, at *2 (E.D.N.Y. Sept. 10, 2024) (reasoning that plaintiff had adequately alleged standing because he alleged dissemination of information to a third party after reinvestigating disputed inquiries). Although Michalski argues that there is causation based upon the "re-reporting" of information to MIB, however, liability for harm based upon re-investigation can only occur after notice of dispute, and therefore, any denials before Fidelity's duty was triggered are insufficient to confer standing. See Onosode v. Equifax Info. Servs., No. 420-cv-00951SDJCAN, 2023 WL 2783263, at *8 (E.D. Texas Mar. 29, 2023) (concluding that plaintiff did not have Article III standing because no dissemination of plaintiff's credit report occurred after defendant's duty to reinvestigate was triggered); Hernandez v. Wells Fargo Bank , N.A., No. 13-cv-13047-ADB, 2015 WL 4480839, at *5 (D. Mass. July 22, 2015) (recognizing that "under the

applicable statute and controlling case law, the mere reporting of inaccurate information, although prohibited, does not give rise to a private cause of action under the FCRA" against a furnisher whose liability is only triggered upon notice of a dispute).[1]

Finally, although Michalski counters that standing can be satisfied based upon a consumer's time spent disputing inaccurate information in consumer reports after the notice has been provided, Michalski does not make that allegation in the complaint, and therefore this allegation is insufficient to confer Article III standing.[2] See D. 39 at 5-6; see generally D. 1. Even if Michalski had pleaded lost time, however, allegations of lost time are insufficient to confer standing absent a concrete harm. See, e.g., Braver v. Diversified Adjustment Serv., Inc., No. 7:22 CV 9390 (NSR), 2023 WL 8435825, at *4 (S.D.N.Y. Dec. 5, 2023) (reasoning that expenditure of time alone is insufficient unless it is inextricably linked to a concrete, tangible injury); Nelson v. Experian Info. Sols., Inc., No. 21-cv-894-CLM, 2022 WL 193010, at *3 (N.D. Ala. Jan. 10, 2022)

---

[1] The Court notes that any purported harm after Fidelity was notified of the dispute amounts to a risk of future harm, which is generally insufficient to provide standing absent some other concrete harm. See TransUnion LLC, 594 U.S. at 436-37. Even though Michalski has alleged that Fidelity failed to conduct a reasonable investigation after notice of the dispute, D. 1 ¶¶ 42-43, 64, Michalski has not plausibly alleged harm, or a concrete risk of future harm, following notice of the dispute. The Court agrees that Michalski's singular and conclusory reference to emotional distress is insufficient alone to confer standing. D. 1 ¶ 71; see Scifo v. Alvaria, Inc., No. 23-cv-10999-ADB, 2024 WL 4252694, at *5 (D. Mass. Sept. 20, 2024). As discussed above, liability against the furnisher based upon a failure to reinvestigate requires notice of the dispute, which Fidelity only received on or about May 16, 2023 and after his alleged harm. D. 1 ¶¶ 62-64.

[2] The cases Michalski relies upon that lost time can constitute injury do not compel a different result. D. 39 at 5-6; see, e.g., Norman v. Trans Union, LLC, 669 F. Supp. 3d 351, 373 (E.D. Pa. 2023) (reasoning that wasted time could constitute an injury because of "Trans Union's blanket policy of ignoring disputes over hard inquiries – a policy unknown to consumers – any time spent in lodging the dispute was invariably in vain and therefore wasted"), appeal dismissed, No. 23-8021, 2024 WL 1793554 (3d Cir. Jan. 10, 2024); Healy v. Milliman, Inc., No. C20-1473-JCC, 2022 WL 1061921, at *3 (W.D. Wash. Apr. 8, 2022) (reasoning that following up multiple times with CRA concerning re-investigation claims could constitute a concrete and particularized injury to establish standing). No such similar allegations are alleged here.

(reasoning that the lost time that plaintiff spent trying to "trigger Experian's duty to reinvestigate (i.e., the first letter) is not a harm that is fairly traceable to the defendant's unlawful conduct" and holding that it was only the time and money spent sending the second and third letters that constituted injuries fairly traceable to Experian's allegedly unlawful failure to conduct a reasonable reinvestigation).  For all these reasons, the Court dismisses Michalski's claim against Fidelity.

2.    *Michalski has Standing to Pursue his Claims Against MIB*

The Court comes to a different conclusion as to MIB based upon its particular, alleged conduct and the statutory scheme that applies to MIB as a CRA.[3]  Michalski has plausibly alleged standing based upon MIB preparing a consumer report that contained alleged inaccurate information that was sent to Fidelity and Foresters that both denied Michalski life insurance coverage based, at least in part, upon that report.  See D. ¶¶  47, 50, 52-55.

First, MIB challenges that Michalski's alleged harm concerning denial of allegedly mandated information pursuant to § 1681g, namely the proprietary medical codes used and plaintiff's original medical providers, cannot constitute a concrete harm because it is an abstract procedural violation and Michalski cannot show how that failure caused a concrete injury.  D. 33 at 5-6.  Courts within this Circuit, however, recognize that an alleged procedural violation of the FCRA can be enough to satisfy standing requirements.  Azeez v. Lifespan Corp., 635 F. Supp. 3d 75, 85 (D.R.I. 2022) (citing cases).  "In evaluating [a plaintiff's] claim of harm [under the FCRA], we thus ask:  (1) whether the statutory provisions at issue were established to protect his concrete

---

[3] Unlike Fidelity, MIB first supplied information to Fidelity on or about January 17, 2022 in connection with Michalski's life insurance application, and MIB further reported information to Foresters in connection with MIB's life insurance application on April 14, 2023.  D. 1 ¶¶ 46-48, 50, 52-55.  As discussed above, the statutory violations at issue concerning Fidelity are different because at the time of the denials of the life insurance, Fidelity's liability period for reinvestigation had not been triggered.

interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." Landry v. Thomson Reuters Corp., No. 16-cv-507-SM, 2018 WL 4568809, at *5 (D.N.H. Sept. 24, 2018) (internal quotation marks and citation omitted).  Here, as to the first requirement, the FCRA creates a "substantive entitlement" to the disclosure of source information.  Kelly v. RealPage Inc., 47 F.4th 202, 214 (3d Cir. 2022).  As to the second requirement, Michalski has plausibly alleged that the files contained inaccurate information as to his medical history and that without all the information provided to Fidelity and Foresters as well as the identity of the medical professional or service provider that purportedly provided the treatment, he was unable to identify what information was communicated to these parties and where to look for records that could assist him in disputing the inaccurate medical information.  See D. 1 ¶¶ 59-61, 67; Kelly, 47 F.4th at 214 (reasoning that plaintiff had adequately alleged the second requirement where there was inaccurate information in the files and omission of defendant's sources allegedly impaired the ability to correct the errors).  Courts have recognized that a failure to provide accurate and complete information, which inhibits a plaintiff's ability to ensure accurate reporting, is sufficient to confer Article III standing.  See Kelly, 47 F.4th at 211–12 (reasoning that "[i]t is therefore enough for standing purposes for plaintiffs to allege that, as a result of an omission, they experienced the adverse effects of being unable to . . . ensure fair and accurate reporting of their credit information") (internal quotation marks and citation omitted); Tailford v. Experian Info. Sols., Inc., 26 F.4th 1092, 1100–01 (9th Cir. 2022) (reasoning that the allegations that certain information

was missing from defendant's § 1681g disclosures and were unable to ensure accurate reporting was sufficiently concrete to support Article III standing at this pleading stage).

Second, MIB challenges that Michalski's conclusory assertions of emotional harm, reputational harm and loss of insurance coverage are insufficient to confer standing.  D. 33 at 6-7. As to loss of insurance, although MIB disputes that loss of insurance coverage is a recognized harm, D. 33 at 7, MIB cites no authority that this is not a concrete injury.  Rather, courts have recognized the denial of life insurance as a sufficient concrete injury to convey standing.  See, e.g., Healy, 2022 WL 1061921, at *3 (reasoning that denial of life insurance based upon incorrect medical information in file was sufficient to demonstrate harm for purposes of an FCRA claim). Here, Michalski has alleged two denials of life insurance based upon the reports MIB supplied.  D. 1 ¶¶ 50, 55.

As to reputational harm, although the Court agrees that Michalski's reputational harm allegations are thin, here, alleged inaccurate information that indicates plaintiff underwent cancer treatment could plausibly impact his benefit options (which Michalski has alleged it did), and as this information was published to a third-party by MIB, Michalski has also adequately alleged potential reputational harm by being associated with an illness that he did not have.  See D. ¶¶ 50, 55; TransUnion LLC, 594 U.S. at 432 (reasoning that reputational harm can serve as a concrete harm for standing when inaccurate information disseminated that could malign a plaintiff's character); McIntyre v. RentGrow, Inc., No. 18-cv-12141-ADB, 2021 WL 3661499, at *6 (D. Mass. July 22, 2021) (relying upon TransUnion LLC and concluding that plaintiff had adequately alleged Article III standing when allegedly inaccurate information was disseminated that she had not paid her debts or had a pending eviction which could similarly damage her reputation), aff'd,

34 F.4th 87 (1st Cir. 2022).[4]  For all these reasons, the Court holds that Michalski has sufficiently established standing for his claims against MIB.

**B.**    **MIB's Motion for Judgment on the Pleadings Pursuant to Rule 12(c)**

MIB challenges its liability under §§ 1681(n) and 1681(o) for willful and negligent noncompliance for alleged violations of the following FCRA provisions:  (1) § 1681g(a) for failure to disclose the proprietary alpha-numeric codes communicated to end users of his consumer report (Count I), § 1681g(a)(2), for failure to disclose the source provider from which MIB obtained medical information (Count II) and § 1681e(b), for failure to maintain a reasonable procedure for ensuring accuracy of its consumer reports.[5]  (Count V).  D. 33 at 8-14.

*1.    Disclosure of Proprietary Codes Pursuant to § 1681g(a) (Count I)*

MIB maintains that § 1681g(a) does not require disclosure of internal proprietary, alpha-numeric codes that are communicated to end users of the reports because these codes would be meaningless to consumers.  D. 33 at 8-11.  Section 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer:  (1) [a]ll information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a)(1).  The FCRA defines the term "file"  as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g). Michalski argues that the internal proprietary codes were required to be disclosed because they were information that was furnished to third-parties, there is a question of whether they were accurately translated and non-disclosure would be in clear contention with § 1681a(g)'s mandate

---

[4]  To the extent MIB argued that emotional harm alleged here alone was not sufficiently pled, D. 33 at 6, the Court need not reach that argument in light of the conclusions above.

[5]  MIB does not appear to move for judgment on the pleadings on the merits as to Count III, a violation of § 1681i(a), and therefore, the Court has not addressed this count here.

that a plaintiff is entitled to all information in his file, regardless of how it is maintained to ensure a clear and accurate disclosure.  See D. 38 at 13-15.

"Our inquiry here is whether the disclosure is understandable to the average consumer." Shaw v. Experian Info. Sols., Inc., 891 F.3d 749, 759 (9th Cir. 2018) (internal quotation marks and citation omitted).  In Shaw, the Ninth Circuit considered a similar question on summary judgment of whether a CRA placing the designation "CLS" (meaning closed) on each consumer disclosure instead of reporting the internal code used was a violation of § 1681g(a)'s requirement to provide all information upon request.  Id.  The Ninth Circuit concluded the CRA was not required to disclose the internal code and reasoned that requiring "[the CRA] to provide its proprietary coded data in a consumer disclosure would contradict § 1681g(a)'s requirement that the disclosure be clear" because "a consumer who received a disclosure with code 9 on it would likely not be able to compare the disclosed information from the credit file against the consumer's personal information in order to . . . determine the accuracy of the information set forth in her credit file because the average consumer would not know what code 9 means."  Id. at 760 (internal quotation marks omitted); see Mintun v. Equifax Info. Servs., LLC, 535 F. Supp. 3d 988, 1001 (D. Nev. 2021) (recognizing that a CRA disclosing coded information to consumers concerning its sources could be considered unreasonable by a jury because "while it might be accurate to disclose coded information to consumers, if the average consumer won't know what the code means without a manual, then the disclosure is not clear and thus fails to comply with § 1681g") (internal quotation marks omitted).  The Court recognizes that in Shaw, the Ninth Circuit appeared to have the benefit of the meaning of codes to assess whether the codes would be "understandable to the average

consumer." <u>Shaw</u>, 891 F.3d at 759.[6]  Although a close call, taking all inferences in Michalski's

favor as the Court must at this stage, Michalski has plausibly alleged that the MIB reports "codes"

to end users that identify the "specific medical and personal information" at issue and without this

information Michalski cannot identify what information was communicated that could assist in

disputing the inaccurate information.  <u>See</u> D. 1 ¶¶ 60-61.  Although the Court recognizes that

Michalski may not be able to eventually succeed on his claim because the codes would not present

a more accurate disclosure, at this stage of the proceedings, the Court cannot determine that as a

matter of law the "codes" would not provide a clearer and accurate disclosure.  Accordingly, the

Court denies MIB's motion as to Count I.[7]

2.    *Disclosure of Original Source Pursuant to § 1681g(a)(2) (Count II)*

MIB also contends that it did not violate § 1681g(a)(2) by failing to provide the sources for

the original service provider that treated Michalski.  D. 33 at 11-12.  Section 1681g(a)(2) provides

that a CRA upon request must "clearly and accurately disclose to the consumer. . .  [t]he sources

---

[6] MIB has cited agency guidance from the Consumer Financial Protection Bureau that
providing summarized reports of a consumer file does not meet disclosure requirements but
recommends the disclosure of the underlying information. D. 33 at 10. Nonetheless, the Court is
not persuaded on the present record that the codes are sufficiently similar to summarized reports
because the codes purportedly provide further underlying information that form the basis for the
report.  <u>See</u> D. 33-1 at 11-12.

[7] MIB's reliance upon <u>Gillespie v. Trans Union Corp.</u>, 482 F.3d 907, 909 (7th Cir. 2007)
does not compel a different result.  D. 33 at 9.  In that case, the plaintiffs argued that the internal
"purge date" should have been disclosed even though there was no indication that the internal
purge date has previously been supplied in the consumer report.  <u>Gillespie</u>, 482 F.3d at 909.  The
court interpreted § 1681g(a)(1) to mean "information included in a consumer report" and
concluded that disclosure was not warranted because "aside from the existence of the purge date
in its file" there was no showing that TransUnion had included similar information in a consumer
report in the past or that it plans to do so in the future.  <u>Id.</u>  at 909-10; <u>see</u> <u>Tailford</u>, 26 F.4th at
1102 (reasoning that "none of the information [p]laintiffs failed to disclose is of
the type that has been included in a consumer report in the past or is planned to be included in such
a report in the future").  Here, however, Michalski plausibly has pled that the codes were disclosed
in the consumer reports to end users.  D. 1 ¶ 15 (referencing "coded" reports).

of the information." 15 U.S.C. 1681g(a)(2). MIB asserts that it complied with this mandate because it disclosed that the source of MIB's information was Fidelity and Fidelity provided further information that it obtained information from Milliman. See D. 33 at 11-12.

Although the parties dispute what is included as a "source," at least some courts has recognized that it is a reasonable interpretation of the statute to understand "sources of information" as referring to the original source of the reported information, as opposed to the identity of any contractors that gathered the information on an agency's behalf. See Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 94 (2d Cir. 2021) (reasoning that defendant was not required to disclose intermediary, third-party contractor who was working on agency's behalf to determine the accuracy of the report); Kelly v. RealPage, Inc., 539 F. Supp. 3d 374, 378–79 (E.D. Pa. 2021) (concluding that defendant "did not act unreasonably by disclosing only the original sources of the reported information as opposed to the identity of third-party vendors that gathered the information on [defendant's] behalf because that is a plausible reading of the statute"); cf. Dennis v. Trans Union, LLC, No. 14-cv-2865, 2014 WL 5325231, at *8 (E.D. Pa. Oct. 20, 2014) (concluding that plaintiff plausibly alleged a claim because even though the "ultimate origin of the data," in defendant's words, is the Albany County Clerk, defendant's source for the line of information that actually appeared on plaintiff's credit report was the undisclosed third party). As the statue does not limit "sources," there could be multiple sources "for a particular piece of information" that a CRA would "be required to disclose." Dennis, 2014 WL 5325231, at *7; see Brauer v. ExamOne World Wide Inc., 683 F. Supp. 3d 1054, 1061 (C.D. Cal. 2023) (concluding that plaintiff's request for a copy of his file to dispute inaccurate medical information triggered defendants' obligation to provide him with the "sources" of information in his report). Further, agency guidance from the Consumer Financial Protection Bureau indicates that "consumer

reporting agencies must disclose to a consumer both the original source and any intermediary or vendor source (or sources)" that provide information to the consumer reporting agency. See D. 33-1 at 7. The guidance further indicates that the true purpose of disclosure is to provide the consumer with the "true sources of any incomplete or inaccurate information in their file" to address any errors, and therefore, if the original source is not provided then the consumer may not be able to correct any errors. Id. at 14-15 (affirming that interpreting the statute to only allow disclosure of a single source of information and not all sources of information would undermine the FCRA's purpose). As there is a dispute concerning whether MIB disclosed all sources of information, the Court cannot determine as a matter of law whether MIB's interpretation and failure to disclose the service provider was reasonable. Accordingly, the Court denies MIB's motion for judgment as to Count II.

3. *Reasonable Procedure in Ensuring Accuracy of Consumer Reports Under § 1681e(b) (Count V)*

MIB contends that it did not violate § 1681e(b) because the standard is "reasonableness" and there is no violation of that alleged duty here. D. 33 at 12-14. A CRA must follow "reasonable procedures to assure maximum possible accuracy" regarding the information contained in a consumer's credit report. 15 U.S.C. § 1681e(b). A claim of noncompliance with § 1681e(b) "consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." Richardson v. Fleet Bank of Mass., 190 F. Supp. 2d 81, 85 (D. Mass. 2001) (internal quotation marks and citation omitted). Here, the parties focus on the second element of whether the inaccuracy concerning Michalski's medical information was due to MIB's failure to follow reasonable procedures to ensure maximum possible accuracy. D.

19

33 at 13; D. 38 at 18-20.   This inquiry is fact-intensive and depends on "the totality of the circumstances."  Ortez v. RentGrow, Inc., No. 24-cv-10376-FDS, 2024 WL 4349252, at *3 (D. Mass. Sept. 30, 2024).   "As long as the complaint raises a plausible inference that [MIB] did not meet its obligation . . . to ensure the preparation of accurate reports, the § 1681e(b) claim cannot, as a matter of law, be dismissed."  Id. (internal quotation marks and citation omitted).  Other courts have held "CRAs must look beyond information furnished to them when it is inconsistent with the CRAs' own records, contains a facial inaccuracy, or comes from an unreliable source."  Wright v. Experian Info. Sols., Inc., 805 F.3d 1232, 1239 (10th Cir. 2015) (citing cases).

Here, there are no allegations that MIB had reason to doubt the inaccuracy of Fidelity's reporting or had prior notice of alleged issues with Fidelity's reporting.  See Rydholm v. Equifax Info. Servs. LLC, 44 F.4th 1105, 1109 (8th Cir. 2022) (reasoning that plaintiff failed to state a claim for lack of reasonable procedures pursuant to § 1681e(b) because there are no allegations that the CRAs knew or should have known about systemic problems concerning reporting debts). The information that MIB reported, however, was based upon private medical records and there is a factual question concerning whether MIB's processes for ensuring accurate information were reasonable.  See D. 1 ¶ 90; see Ortez, 2024 WL 4349252, at *3 (noting that that such determination is "fact-driven" and reasoning that the inaccuracy concerning plaintiff's criminal history is publicly available and verifiable and provided plausible allegations that defendant was negligent in maintaining reasonable procedures for reporting information).  The information that MIB received concerning the medical information was admittedly vague and potentially inconsistent because it stated, "specifics unknown," did not report a time period for the alleged diagnosis but claimed that the information was based upon medical records.  See D. 1 ¶ 59.  As the standard is "reasonableness," the Court cannot as a matter of law conclude that MIB enacted reasonable

procedures for ensuring accurate information.  See, e.g., Haley v. TalentWise, Inc., 9 F. Supp. 3d 1188, 1193 (W.D. Wash. 2014) (reasoning that because the report plausibly contained inaccurate information, the court could infer that defendant may not have followed reasonable procedures which was a factual question).  Accordingly, the Court denies MIB's motion as to Count V.

## VI.    Conclusion

For the foregoing reasons, Fidelity's motion for judgment on the pleadings is ALLOWED, D. 34, and MIB's motion for judgment on the pleadings is DENIED, D. 33.

**So Ordered.**

/s Denise J. Casper
United States District Judge