**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL MICHALSKI, *on behalf of himself and all others similarly situated*, | ) | C.A. NO. 1:24-CV-10227-DJC |
| *Plaintiff*, | ) | |
| v. | ) | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND TO APPROVE A SERVICE AWARD TO PLAINTIFF** |
| MIB GROUP, INC., MIB, LLC, and FIDELITY SECURITY LIFE INSURANCE COMPANY, | ) | |
| *Defendants*. | ) | |

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis*
John Soumilas*
Lauren KW Brennan*
Francis Mailman Soumilas, P.C.
1600 Market Street, Suite 2510
Philadelphia, Pennsylvania 19103
T: (215) 735-8600
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Admitted *Pro Hac Vice*

**Christopher M. Lefebvre**
BBO #629056
P.O. Box 479
Pawtucket, RI 02862
T: (401) 728-6060
chris@lefebvrelaw.com

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1
- A. Overview of Settlement Class Benefits ..... 1
- B. Procedural History ..... 2
- C. Notice Program ..... 3

II. ARGUMENT ..... 4
- A. Awarding Attorneys' Fees to Class Counsel Using the Percentage of the Fund Method is Fair and Reasonable ..... 4
  - 1. The Size of The Fund and the Number of Persons Benefitted ..... 6
  - 2. The Skill, Experience, and Efficiency of the Attorneys Involved ..... 7
  - 3. The Complexity and Duration of the Litigation ..... 7
  - 4. The Risks of the Litigation ..... 8
  - 5. The Amount of Time Devoted to the Case by Counsel ..... 8
  - 6. Awards in Similar Cases ..... 9
  - 7. Public Policy Considerations ..... 9
- B. A Lodestar Cross-Check Further Supports the Requested Attorney's Fee Award ..... 9
- C. Class Counsel Should Be Awarded Their Litigation Costs and Expenses ..... 11
- D. The Court Should Approve a Service Award to Plaintiff Daniel Michalski ..... 12

III. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

*In re Aetna, Inc. Sec. Litig.*,
2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................11

*In re Am. Dental Partners, Inc. Sec. Litig.*,
2010 WL 1427404 (D. Mass. Apr. 9, 2010) ....................5

*Applegate v. Formed Fiber Techs., LLC*,
2013 WL 6162596 (D. Me. Nov. 21, 2013)....................6

*Bennett v. Roark Capital Grp., Inc.*,
2011 WL 1703447 (D. Me. May 4, 2011) ....................6

*Bezdek v. Vibram USA, Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) ....................5

*Bezdek v. Vibram USA, Inc.*,
809 F.3d 78 (1st Cir. 2015)....................6

*In re Bisys Sec. Litig.*,
2007 WL 2049726 (S.D.N.Y. July 16, 2007) ....................11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................4

*Bussie v. Allamerica Fin'l Corp.*,
1999 WL 342042 (D. Mass. Mqqay 19, 1999) ....................11

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
989 F. Supp. 375 (D. Mass. 1997) ....................5

*In re Fid./Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999)....................11

*Flores v. Express Servs., Inc.*,
2017 WL 1177098 (E.D. Pa. Mar. 30, 2017)....................10

*Gordan v. Massachusetts Mut. Life Ins. Co*.,
2016 WL 11272044 (D. Mass. Nov. 3, 2016) ....................5, 12

*Grove v. Wells Fargo Fin. California, Inc*.,
606 F.3d 577 (9th Cir. 2010) ....................11

*Henderson v. Acxiom Risk Mitigation, Inc*.,
C.A. No. 12-589 (E.D. Va. Aug. 4, 2015) (ECF 116) ....................10

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001)....................11

*Jackson v. New England Biolabs, Inc.*,
2025 WL 2256261 (D. Mass. Aug. 7, 2025) ....................11

*Kelly v. Bus. Info. Grp., Inc.*,
2019 WL 414915 (E.D. Pa. Feb. 1, 2019) ....................10

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 WL 2006833 (D. Mass. Aug. 17, 2005) ....................6, 12

*McCormick v. Festiva Dev. Grp., LLC*,
2011 WL 2457883 (D. Me. June 20, 2011) ....................6

*Medoff v. CVS Caremark Corp.*,
2016 WL 632238 (D.R.I. Feb. 17, 2016)....................6, 8

*In re Merry-Go-Round Enterprises*, *Inc.*,
244 B.R. 327 (Bankr. D. Md. 2000) ....................11

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 WL 2408560 (D. Mass. Aug. 3, 2009) ....................9

*Patel v. Trans Union, LLC*,
2018 WL 125194 (N.D. Cal. March 11, 2018)....................10

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011)....................12

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)....................5, 9

*In re Rite Aid Corp. Sec. Litig*.,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................11

*In re Rite Aid Corp. Sec. Litig*.,
396 F.3d 294 (3d Cir. 2005)....................10

*Roberts v. TJX Companies, Inc*.,
2016 WL 8677312 (D. Mass. Sept. 30, 2016) ....................5

*Robinson v. National Student Clearinghouse*,
2020 WL 4873728 (D. Mass. July 8, 2020)....................10

*Robinson v. National Student Clearinghouse*,
No. 1:19-cv-10749-FDS (D. Mass.) ....................10

*Rosted v. First USA Bank*,
No. 97-1482 (Doc. No. 198) (W.D. Wash. June 15, 2001) ....................................................11

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007)..................................................................................................8

*In re StockerYale, Inc. Sec. Litig.*,
2007 WL 4589772 (D.N.H. Dec. 18, 2007)..................................................................5

*In re Telik, Inc., Securities Litig*.,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................................11

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)....................................................................................4, 5

*Thomas v. Backgroundchecks.com*,
C.A. No. 13-29 (E.D. Va. Aug. 5, 2015) (ECF 114) ....................................................10

*Van Vranken v. ARCO*,
901 F. Supp. 294 (N.D. Cal. 1995) ...........................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................................................5

**STATUTES & FEDERAL RULES**

Fair Credit Reporting Act 15 U.S.C. §§ 1681-1681x ........................................................ *passim*

15 U.S.C. 1681n(a)(1)-(2)............................................................................................8

15 U.S.C. § 1681n.....................................................................................................6

15 U.S.C. § 1681n(a)(3) ............................................................................................4

15 U.S.C. §1681o(a)(2)...............................................................................................4

15 U.S.C. § 1681g(a)(2)..............................................................................................1

FED. R. CIV. P. 23(h) ...................................................................................................4

Plaintiff Daniel Michalski respectfully submits this Memorandum of Law in support of his petition for an award of attorney's fees, expenses, and costs in the amount of $808,333.33 plus litigation costs and expenses of $22,122.75, and a service award for Plaintiff Michalski in the amount of $5,000.00. Defendants MIB Group, Inc. and MIB, LLC ("Defendants" or "MIB") do not oppose the award sought herein.

# I. INTRODUCTION

## A. Overview of Settlement Class Benefits

Plaintiff Michalski brought this lawsuit as a class action on behalf of consumers across the country asserting that MIB failed to disclose to him and other consumers certain information that the federal Fair Credit Reporting Act ("FCRA") requires consumer reporting agencies ("CRAs") such as MIB to provide in response to consumer requests for information. The Settlement here resolves Plaintiff's claim that MIB failed to disclose to him and other consumers all of the sources from which MIB obtained the information that it retains about them and communicates to end users, in violation of FCRA section 1681g(a)(2). The efforts of Plaintiff Michalski and Class Counsel have created substantial benefits for the 10,886 Settlement Class Members here.

First, the settlement requires MIB to effect certain changes to its business practices with respect to disclosing its sources of information to consumers. Specifically when a consumer disputes information in their MIB consumer file, and that information was provided by a "Service Provider" source, MIB will require that the furnisher of that information must 1) use reasonable efforts to identify the underlying medical provider(s) (*e.g.*, physician, lab), and 2) if identified, include the name(s) of the provider(s) in their communication to the consumer after completing the reinvestigation process. This change will benefit consumers going forward by establishing a mechanism for consumers to learn where to go for additional information if a reinvestigation does

not resolve their concerns regarding an item of information provided by a "Service Provider" source.

Second, the settlement creates a non-reversionary Settlement Fund in the amount of $2,425,000.000. Settlement Agreement ("Agreement") ECF 76-1 at § 4. Net of the proposed deduction for attorneys' fees, costs and a service award for Class Representative Michalski and the costs of notice and administration of the settlement, if finally approved, this Fund provides for an automatic distribution of *pro rata* payments to Settlement Class Members, estimated to be $140 each.

Thus, the Settlement creates substantial financial benefits for Settlement Class Members, as well as meaningful changes that will benefit both Settlement Class Members and other consumers in the future.

### B. Procedural History

Plaintiff filed his Complaint on January 29, 2024. ECF 1.[1] MIB filed an Answer and subsequently filed a Motion for Judgment of Dismissal on the Pleadings. ECF 14; ECF 33. After complete briefing, this Court denied MIB's motion was denied on January 14, 2025. ECF 61.

Concurrently with the motion practice, the parties conducted extensive written discovery including exchanging interrogatory requests and responses and voluminous document productions. Plaintiff also took the deposition of an MIB witness who addressed MIB's handling of Plaintiff's dispute and requests for information and MIB's practices and procedures.

Armed with this information, and with the benefit of the Court's ruling on MIB's Motion for Judgment on the Pleadings, the parties initiated their extensive arms-length settlement

[1] Plaintiff also asserted a claim against Fidelity Security Life Insurance Company ("Fidelity"), an insurer to whom Plaintiff asserts that MIB disseminated in inaccurate report. Fidelity filed an Answer (ECF 15), and moved for dismissal on the pleadings. ECF 34-35. Fidelity's motion was granted on standing grounds. ECF 61.

discussions, including a full-day, in-person mediation with respected mediator Brad Honoroff of The Mediation Group in Brookline, MA on May 14, 2025. In addition to the formal discovery described above, the Parties exchanged further information informally to support their settlement discussions. The mediation was successful and resulted in a term sheet spelling out the essential terms of the Settlement.

Documenting a formal settlement agreement and related documents took additional time and included the preparation and exchange of drafts and a series of telephone and written negotiations concerning the specific terms and conditions of the agreement and exhibits to the agreement, including the proposed class notices. The parties finalized their agreement on July 30, 2025, and submitted the Agreement to the Court as Appendix I to Plaintiff's Motion for an Order Preliminarily Approving Class Action Settlement and Directing Notice to the Class. ECF 76-1. On October 6, 2025, this Court entered an Order directing notice to the Settlement Class. ECF 81.

**C. Notice Program**

On November 6, 2025, the Settlement Administrator, Apex Class Action Administration, established the Settlement Website, on which it posted the Website Notice and other settlement-related documents, and established a toll-free telephone number for Settlement Class Members to call for information regarding the settlement per the requirements of the Settlement Agreement. *See* ECF 76-1 at §§ 5(b), 6(c). On the same date, the Settlement Administrator began disseminating notice via email, with mailed notice to individuals for whom no email address is available or for whom email notice is returned as undeliverable. *Id.* at §§ 5(d), 6. The Settlement Administrator will provide a detailed declaration concerning the efficacy of the notice plan on December 29, 2025, seven days after the deadline for Settlement Class Members to request exclusion or submit

objections. *Id.* at § 5(h). To date, only one Settlement Class Member has requested exclusion, and none have submitted objections.[2]

## II. ARGUMENT

### A. Awarding Attorneys' Fees to Class Counsel Using the Percentage of the Fund Method is Fair and Reasonable

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Both are true here: the Fair Credit Reporting Act specifically provides for the award of attorney's fees and costs at 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), and the Settlement Agreement also provides for an award of attorneys' fees. ECF 76-1 at §§ 4(b)(ii), 9.

In cases in which the parties' settlement creates a common fund of money for the benefit of class members, such as the one at bar, this Court may award attorney's fees to Class Counsel based upon "a reasonable percentage of the fund recovered for those benefitted by the litigation," a method often abbreviated as "POF." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[3] Of the two methods recognized by the First Circuit for calculating attorneys' fees in the class action context involving a common fund, the POF method "functions exactly as the name implies: the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *In re Thirteen*

---

2 The deadline for requests for exclusions and for objections is December 19, 2025. To the extent that any objections are submitted to the fee request (which will be posted on the Settlement Website), they will be addressed in connection with the Motion for Final Approval to be filed on January 21, 2026.

3 This Court also has the discretion to award attorney's fees based upon class counsel's lodestar by "determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *In re Thirteen Appeals*, 56 F.3d 295 at 305, 307. Class Counsel respectfully urges this Court to adopt the POF method for the reasons set forth below, including that it is supported by a lodestar crosscheck. *See infra* at §II.B.

*Appeals*, 56 F.3d at 305. Moreover, the POF method "appropriately aligns the interests of the class with the interests of the class counsel." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997)*; see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the POF method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

In the First Circuit, the POF method "is the prevailing praxis" because it is "less burdensome to administer" and avoids the need to "review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended[.]" *In re Thirteen Appeals*, 56 F.3d at 307; *see also In re Am. Dental Partners, Inc. Sec. Litig.*, 2010 WL 1427404, at *1 (D. Mass. Apr. 9, 2010) ("In common fund cases, the trend increasingly favors the calculation of a fee award by use of the percentage of the fund (POF) method.").

Plaintiff's request for an award of attorneys' fees amounts to 33% of the total economic value created by the settlement. This amount – negotiated only after the substantive terms of the settlement were agreed upon – is supported by the POF method that First Circuit courts use to determine fees and costs in common fund class action cases. *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 349-50 (D. Mass. 2015). *See also Roberts v. TJX Companies, Inc*., 2016 WL 8677312, *11 (D. Mass. Sept. 30, 2016) (approving one-third of the fund with lodestar cross-check); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85-89 (D. Mass. 2005) (approving 33 1/3% fee as a percentage of the fund).

Courts routinely grant attorneys' fee awards of one-third of the settlement fund, further bolstering the reasonableness of Plaintiff's request. *See Gordan v. Massachusetts Mut. Life Ins. Co*., 2016 WL 11272044, *2 (D. Mass. Nov. 3, 2016) ("the one-third fee requested here is fair and reasonable"); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, *6 (D.N.H. Dec. 18, 2007)

(awarding fees in the amount of 33% of settlement fund); *McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883, *1 (D. Me. June 20, 2011) (awarding fees in the amount of one third of settlement fund); *Applegate v. Formed Fiber Techs., LLC*, 2013 WL 6162596, *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447, *2 (D. Me. May 4, 2011) (same); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, *9 (D.R.I. Feb. 17, 2016) (awarding 30% of common fund and observing that "as several courts have concluded, 30% is not out of proportion with recovery percentages in large class action litigations.").

Although the First Circuit has not set forth a fixed test for courts to apply to requests for an award of attorneys' fees under the POF method, courts in this district often consider the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, *3 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Each of the above factors supports Plaintiff's request for an award of attorneys' fees and expenses here.

**1. The Size of The Fund and the Number of Persons Benefitted**

The Settlement benefits over 10,000 Settlement Class Members, each of whom shall receive approximately $140 each without having to make a claim or take any affirmative action. This represents a meaningful monetary recovery that is within the range of statutory damages available if Plaintiff were to certify a class on contest and prevail at trial. 15 U.S.C. § 1681n ($100-$1,000 statutory damages range). *Cf. Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 83 (1st Cir. 2015) (affirming fairness of $8.44 refund per pair of shoes even though lower than $20-$50 estimate included on notice materials). Most Settlement Class Members have received notice as of the date

of this filing and to date, the Settlement Administrator has received no objections to the Settlement or to the requested fee award, which was clearly disclosed in the notices Settlement Class Members received. ECF 76-1 at pp. 35, 38, 41. This factor weighs heavily in favor of granting Class Counsel its requested award fees and expenses.

**2. The Skill, Experience, and Efficiency of the Attorneys Involved**

Here, Class Counsel litigated this case efficiently on behalf of Plaintiff Michalski and the Settlement Class because of their extensive experience in FCRA and class action litigation. *See* accompanying Declaration of James A. Francis ("Francis Decl.") at ¶¶ 4-10 (setting forth experience and qualifications of Class Counsel); Declaration of Christopher M. Lefebvre ("Lefebvre Decl.") at ¶ 3. This depth of experience with consumer claims and class action litigation allowed Class Counsel to pursue this case and negotiate a settlement that capitalized on the strengths of the claims asserted while taking into account the risks of continued litigation. Moreover, Defendant was more than ably represented by skilled counsel from Peabody & Arnold, a recognized and respected defense firm. This factor, too, weighs heavily in favor of granting Class Counsel its requested award fees and expenses.

**3. The Complexity and Duration of the Litigation**

As demonstrated by MIB's Motion for Judgment on the Pleadings, Plaintiff's claims asserted presented complex issues of both fact and law, and the application of the Fair Credit Reporting Act's provisions to the context of medical record reporting required creative and novel approaches. Class Counsel drew on their years of previous FCRA litigation experience to craft the Complaint and respond to Defendants' arguments in motion practice, in connection with discovery, and in negotiating the Settlement.

**4. The Risks of the Litigation**

In this matter, Class Counsel represented Plaintiff Michalski and the Settlement Class on a wholly contingent basis, undertaking a significant risk of non-payment, a factor that "weighs more heavily in favor of rewarding litigation counsel." *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, *9 (D.R.I. Feb. 17, 2016) (citing *In re Lupron*, 2005 WL 2006833, at *4 ("the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate award")). Moreover, Class Counsel faced uncertainty regarding whether statutory and punitive damages under the FCRA would be available for class members in this matter. *See* 15 U.S.C. 1681n(a)(1)-(2) (statutory and punitive damages available only upon a finding that a defendant has "willfully" failed to comply with FCRA); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (a statutory reading that is not "objectively unreasonable" may shield a defendant from a finding that its conduct willfully violated the FCRA).

The risks of this litigation weigh heavily toward granting Plaintiff's request for Class Counsel's award of attorney's fees and expenses.

**5. The Amount of Time Devoted to the Case by Counsel**

In this matter, Class Counsel thoroughly investigated the facts of Plaintiff Michalski's interactions with Defendant and drafted a robust Complaint against Defendant that set forth detailed allegations. ECF 1. Class Counsel also responded to Defendants' Motion for Judgment on the Pleadings, and simultaneously pursued robust discovery targeted at identifying Defendants' practices for responding to consumer disputes and requests for information, and identifying individuals impacted by the same practices as Plaintiff Michalski.

Class Counsel engaged in extensive negotiations and informal discovery concerning the number of affected consumers in preparation for mediation. Following the mediation, much time and effort went into crafting the Settlement Agreement, portions of which were highly contested.

Substantial time went into exchanges of drafts of settlement documents and making appropriate revision. This factor highlights the very high rate of return on the hours Class Counsel invested in this matter and weighs in favor of granting Class Counsel its requested award fees and expenses.

#### 6. Awards in Similar Cases

As noted above, Class Counsel's request for attorneys' fees and expenses, which amounts to approximately one-third of the economic value created by the Settlement Agreement, is in step with other awards of attorneys' fees and costs.

#### 7. Public Policy Considerations

Here, public policy supports an award to Class Counsel because the Settlement achieves practices changes which will benefit not only Settlement Class Members but other consumers as well, by ensuring that MIB identifies its "Service Provider" sources of information to consumers. This factor supports Plaintiff's request as well.

### B. A Lodestar Cross-Check Further Supports the Requested Attorney's Fee Award

Consideration of Class Counsel's lodestar in this matter underscores the reasonableness of the award of attorneys' fees and expenses requested by Plaintiff here.

Because the lodestar cross check calculation serves only as a verification of the primary POF method, it is common to conduct only an abbreviated review to provide a "'*perspective* on the reasonableness of a given percentage award.'" *In re Relafen*, 231 F.R.D. at 81 (quoting *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002) (emphasis added by *In re Relafen* court). An appropriate lodestar cross-check can be accomplished by "'estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant[.]'" *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) (quoting *Manual for Complex Litigation*

*(Fourth)* § 14.122 (2004)). *See also In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 305-06 (3d Cir. 2005) (a lodestar cross check "need entail neither mathematical precision nor bean counting.").

As detailed in the declarations submitted herewith and the attachments thereto, the attorneys and paralegals working on this case contemporaneously recorded their time using computerized billing software. The lodestar for all counsel here is $382,837.00, reflecting over 600 hours of attorney and paralegal time. *See* Francis Decl. at ¶ 20.[4]

Thus, the requested award of attorneys' fees in the amount of $808,333.33 is only 2.11 times more than Class Counsel's lodestar, a multiplier routinely deemed reasonable in class action cases. *See Flores v. Express Servs., Inc.*, 2017 WL 1177098, *4 (E.D. Pa. Mar. 30, 2017) (multiplier of 4.6 reasonable for FMS because of risk of non-recovery, lack of objections to the fee from defendant or class members, counsel's expertise and efficiency, substantial monetary benefit for class members, and defendant practice changes that "strongly [benefit] the public-at-large"); *Kelly v. Bus. Info. Grp., Inc*., 2019 WL 414915, *21 (E.D. Pa. Feb. 1, 2019) (multiplier of 2.11 reasonable for FMS and co-counsel considering similar factors); *Patel v. Trans Union, LLC*, 2018 WL 125194 (N.D. Cal. March 11, 2018) (court granted fee of one-third of the settlement fund, representing almost a 2.0 multiplier of lodestar); *Henderson v. Acxiom Risk Mitigation, Inc*., C.A. No. 12-589 (E.D. Va. Aug. 4, 2015) (ECF 116) (court approved fees of 30% of the $20.8 million settlement fund, a 3.05 multiplier of lodestar); *Thomas v. Backgroundchecks.com*, C.A. No. 13-29 (E.D. Va. Aug. 5, 2015) (ECF 114) (court approved fee of 28.9% of an $18 million settlement fund, equating to a multiplier of 3.47). Multipliers of 3 or above are in line with awards

---

[4] This lodestar figure was calculated using counsel's standard hourly rates, which courts in this district have relied upon in approving fee petitions in other class action settlements. *See Robinson v. National Student Clearinghouse*, No. 1:19-cv-10749-FDS (D. Mass.) at ECF 28 (fee petition in FCRA class action conducting lodestar cross-check based upon FMS standard hourly rates); *Robinson v. National Student Clearinghouse*, 2020 WL 4873728, at *1 (D. Mass. July 8, 2020) (approving fee petition in full).

by many other federal courts.[5]

### C. Class Counsel Should Be Awarded Their Litigation Costs and Expenses

The efforts of Class Counsel have resulted in substantial benefits to the Settlement Class. In doing so, Class Counsel incurred out-of-pocket expenses in the aggregate amount of $22,122.75 for filing, discovery, travel, research, private mediation and other litigation related costs. See Francis Decl. at ¶ 17 and Exhibit C. These costs are eminently reasonable in light of the nature of the action and the tasks that needed to be performed. Here, Class Counsel seek reimbursement of these expenses in accordance with the parties' settlement agreement. See ECF 76-1 at § 4(b)(ii). Class Counsel's costs are reasonable in light of the nature of this action and the tasks that needed to be performed. *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *Jackson v. New England Biolabs, Inc.*, No. CV 23-12208-RGS, 2025 WL 2256261, at *3 (D. Mass. Aug. 7, 2025) (approving expenses for filing fees, postage costs, copying charges, process server fees, PACER costs, maintenance costs for electronic databases for e-discovery, expenses for travel to mediation and the final approval hearing, and payment to the mediator. *See also Grove v. Wells Fargo Fin. California, Inc*., 606 F.3d 577, 583 (9th Cir. 2010) (courts may award non-taxable costs as part of

---

[5] *See, e.g., In re Telik, Inc., Securities Litig*., 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("multipliers of over 4 are routinely awarded by courts, including this Court"); *In re Bisys Sec. Litig*., 2007 WL 2049726 *3 (S.D.N.Y. July 16, 2007) (multiplier of 2.99 "falls well within the parameters set in this district and elsewhere")*; In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multiplier of 4.5 to 8.5 reasonable); *In re Merry-Go-Round Enterprises*, *Inc.,* 244 B.R. 327 (Bankr. D. Md. 2000) (multiplier of 19.6); *Bussie v. Allamerica Fin'l Corp.,* 1999 WL 342042 (D. Mass. Mqqay 19, 1999) (multiplier of 3.3 reasonable); *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685 (N.D. Ga. 2001) (multiplier between 2.5 and 4.0 reasonable); *Rosted v. First USA Bank*, No. 97-1482 (Doc. No. 198) (W.D. Wash. June 15, 2001) (multiplier of 3.0 reasonable); *In re Aetna, Inc. Sec. Litig.*, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) (multiplier of 3.6 reasonable); *Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) (multiplier of 3.6 reasonable).

the attorney's fee award in an FCRA case). Class Counsel therefore respectfully request that their reasonable costs and expenses be reimbursed.

**D. The Court Should Approve a Service Award to Plaintiff Daniel Michalski**

Class Counsel requests that this Court approve the payment of a $5,000.00 service award to Plaintiff, now Class Representative, Daniel Michalski for his service to the Settlement Class.

A service award for bringing and litigating this case on behalf of the class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. Manual for Complex Litigation, § 21.62, at n. 971 (4th ed. 2004) (citing *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990); *In re Lupron*, 2005 WL 2006833, at *7 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted). Courts routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011).

Plaintiff Michalski has been closely involved with this case from the beginning. His efforts were instrumental in providing the necessary background information and documents that make this case possible and his desire and willingness to seek relief for others similar to him helped to create the benefits all Settlement Class Members will enjoy here. He also participated in the mediation session that resulted in the Settlement. A service award of $5,000.00 is reasonable and falls within the range of awards approved in other class actions. *See, e.g., Gordan*, 2016 WL 11272044, at *3 (approving award of $20,000 to each named plaintiff for "searching for, providing, requesting and obtaining critical documents.").

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant the instant Motion and enter the proposed order filed herewith.

.

Dated: December 5, 2025

Respectfully submitted,

DANIEL MICHALSKI, *by his Attorneys*,

/s/ *James A. Francis*

James A. Francis*
John Soumilas*
Lauren KW Brennan*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, Pennsylvania 19103
T: (215) 735-8600
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Christopher M. Lefebvre
BBO #629056
P.O. Box 479
Pawtucket, RI 02862
T: (401) 728-6060
chris@lefebvrelaw.com

**Admitted Pro Hac Vice*